Christopher C. Hoffman (CA SBN 176334)
choffman@fisherphilips.com
Aaron Olsen (CA SBN 224947)
aolsen@fisherphillips.com
FISHER & PHILLIPS LLP
4747 Executive Drive, Suite 1000
San Diego, California 92121
Telephone: (858) 597-9600
Facsimile:  (858) 597-9601

Juan C. Araneda (CA SBN 213041)
jaraneda@fisherphillips.com
FISHER & PHILLIPS LLP
One Embarcadero Center, Suite 2050
San Francisco, CA  94111
Telephone:  (415) 490-9000
Facsimile:   (415) 490-9001

Attorneys for Defendants
KINDER MORGAN G.P., INC., KINDER MORGAN TERMINALS, INC.,
and KINDER MORGAN BULK TERMINALS LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN M. BAILEY, individually, on behalf of all others similarly situated, and as a representative of other aggrieved employees,<br><br>Plaintiff,<br><br>vs.<br><br>KINDER MORGAN G.P., INC., a Delaware corporation; KINDER MORGAN TERMINALS, INC., a Delaware corporation; KINDER MORGAN BULK TERMINALS LLC, a Louisiana company; and Does 1 to 10,<br><br>Defendants. | Case No.:<br><br>[*Removed from Alameda County Superior Court, Case No. HG18903323*]<br><br>**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1332, 1441, 1446 and 1453**<br><br><br><br>Complaint Filed:  May 2, 2018<br>Trial Date:  None |

# TABLE OF CONTENTS

I.      NOTICE OF REMOVAL ........................................................................................ 1

II.     PAPERS FROM REMOVED ACTION ................................................................. 1

III.    NATURE OF REMOVED CASE ........................................................................... 1

IV.     REMOVAL IS TIMELY ......................................................................................... 2

V.      THE COURT HAS DIVERSITY JURISDICTION ............................................. 2

VI.     AMOUNT IN CONTROVERSY - DIVERSITY JURISDICTION ..................... 4

        A.      Bases for Calculation of Amount In Controversy ................................... 4

        B.      Calculation of Amount In Controversy ..................................................... 5

VII.    THE COURT HAS JURISDICTION UNDER THE CLASS ACTION FAIRNESS

        ACT ........................................................................................................................ 13

VIII.   DIVERSITY EXISTS UNDER CAFA ................................................................. 13

IX.     THE PUTATIVE CLASS EXCEEDS 100 ............................................................ 13

X.      THE AGGREGATE AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION ....... 14

XI.     VENUE .................................................................................................................... 20

XII.    INTRA-DISTRICT ASSIGNMENT ................................................................... 20

FPDOCS 34121516.7

## TABLE OF AUTHORITIES

**Cases**

*Andrade v. Arby's Rest. Grp., Inc.*,
   No. 15-CV-03175 NC, 2016 WL 7211141, at *13 (N.D. Cal. Dec. 13, 2016) .................. 9, 18

*Cain v. Hartford Life & Acc. Ins. Co.*,
   890 F. Supp. 2d 1246 (C.D. Cal. 2012) ................................................................ 4, 14

*Cleveland v. Groceryworks.com, LLC*,
   200 F. Supp. 3d 924, 963 (N.D. Cal. 2016) ......................................................... 6, 17

*Dart Cherokee Basin Operating Co. v. Owens*,
   135 S. Ct. 547 (2014) ................................................................................................ 4, 14

*Dawson v. Hitco Carbon Composites, Inc.*,
   No. CV16-7337 PSG (FFMx), 2016 WL 7235629, at *3 (C.D. Cal. Dec. 14, 2016) ........... 16

*Emrich v. Touche Ross & Co.*,
   846 F.2d 1190 (9th Cir. 1988) .................................................................................. 2

*Galt G/S v. JSS Scandinavia*,
   142 F.3d 1150 (9th Cir. 1998) .................................................................................. 11

*Gaus v. Miles, Inc.*,
   980 F.2d 564 (9th Cir. 1992) .................................................................................... 4

*Giannini v. Northwestern Mut. Life Ins. Co.*,
   2012 WL 1535196, at *4 (N.D. Cal. Apr. 30, 2012) ................................................ 19

*Gomez v. Michaels Stores, Inc.*,
   No. EDCV 15-2328-JGB-DTBx, 2016 WL 738196, at *3 (C.D. Cal. Feb. 22, 2016) ........... 18

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011, 1029 (9th Cir. 1998) ....................................................................... 19

*Ibarra v. Manheim Invs. Inc.*,
   775 F.3d 1193 (9th Cir. 2015) .................................................................................. 14

*Kuxhausen v. BMW Fin. Servs. NA LLC*,
   707 F.3d 1136 (9th Cir. 2013) .................................................................................. 13

*Lara v. Trimac Transp. Servs. (W.) Inc.*,
   No. CV 10-4280, 2010 WL 3119366, at *3 (C.D. Cal. Aug. 6, 2010) ....................................... 5

*Mamika v. Barca*,
   68 Cal. App. 4th 487 (1998) .................................................................................... 9, 18

*Mejia v. DHL Express (USA), Inc.*,
   No. CV 15-890-GHK JCX, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) ................. 16

*Montecino v. Spherion Corp.*,
   427 F. Supp. 2d 965 (C.D. Cal. 2006) ..................................................................... 9, 19

*Oda v. Gucci Am., Inc.*,
   No. 2:14-CV-07469-SVW, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) ........................ 16

*Pineda v. Bank of Am., N.A.*,
   50 Cal. 4th 1389 (2010) ........................................................................ 6, 9, 19

*Richmond v. Allstate Ins. Co.*,
   897 F. Supp. 447 (S.D. Cal. 1995) .................................................................... 4

*Ritenour v. Carrington Mortg. Servs. LLC*,
   No. SACV 16-02011-CJCDFMX, 2017 WL 59069, at *4 (C.D. Cal. Jan. 5, 2017) ........ 14, 18

*Salcido v. Evolution Fresh, Inc.*,
   No. 2:14-cv-09223-SVW-PLA, 2016 WL 79381, at *7 (C.D. Cal. Jan. 6, 2012) .................. 19

*Sanchez v. The Ritz Carlton*,
   No. CV 15-3484 PSG (PJWx), 2015 WL 4919972, at *4 (C.D. Cal. Aug. 17, 2015) ........... 16

*Serrano v. 180 Connect, Inc.*,
   478 F.3d 1018 (9th Cir. 2007) ...................................................................... 13

*Simmons v. PCR Technology*,
   209 F. Supp. 2d 1029 (N.D. Cal. 2002) ............................................................. 11

*Singer v. State Farm Mut. Auto. Ins. Co.*,
   116 F.3d 373 (9th Cir. 1997) ......................................................................... 4

*Smith v. Brinker Int'l, Inc.*,
   No. C 10-0213 VRW, 2010 WL 1838726 *2, 5 (N.D. Cal. May 5, 2010) ........................... 11

*Tajonar v. Echosphere, LLC.*,
   No. 14-cv-2732-LAB (RBB), 2015 WL 4064642, at *3 (S.D. Cal. July 2, 2015) ................. 19

*Unutoa v. Interstate Hotels & Resorts, Inc.*,
   No. 2:14-CV-09809-SVW-PJ, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) ......... 14, 16

*Van v. Language Line Servs., Inc.*,
   No. 14-CV-03791-LHK, 2016 WL 3143951, at *9 (N.D. Cal. June 6, 2016) .............. 6, 7, 17

*White v. FCI USA, Inc.*,
   319 F.3d 672 (5th Cir. 2003) .......................................................................... 4

**Codes**

28 U.S.C. § 1332 ........................................................................................ 1, 2

28 U.S.C. §  1332(c)(1) .................................................................................. 13

28 U.S.C. § 1332(d)(2)(A) ............................................................................... 13

28 U.S.C. § 1332(d)(5)(B) ............................................................................... 14

28 U.S.C. § 1391(a)(2) .......................................................................................... 20

28 U.S.C. § 1441 ..................................................................................... 1, 2, 3, 13

28 U.S.C. § 1446 ............................................................................................. 1, 2

28 U.S.C. § 1453 ........................................................................................... 1, 13

28 U.S.C. § 1603 ................................................................................................ 13

28 U.S.C. §§ 1711–1715 .................................................................................... 13

Cal. Civ. Proc. Code § 338 .................................................................................. 6

Cal. Civ. Proc. Code § 340 ...................................................................... 8, 10, 11

Cal. Civ. Proc. Code § 1021.5 ........................................................................... 11

Cal. Labor Code § 1994 ........................................................................... 8, 9, 12

Cal. Labor Code § 1194.2 ........................................................................... 2, 7, 8

Cal. Labor Code § 1197 ............................................................................... 2, 10

Cal. Labor Code § 1197.1 ..................................................................................... 8

Cal. Labor Code § 201 ................................................................................. 2, 10

Cal. Labor Code § 202 ................................................................................. 2, 10

Cal. Labor Code § 203 ............................................................................... passim

Cal. Labor Code § 218.5 ..................................................................................... 11

Cal. Labor Code § 218.6 ..................................................................................... 12

Cal. Labor Code § 226 ............................................................................... passim

Cal. Labor Code § 226.7 ............................................................................ passim

Cal. Labor Code § 2698 ............................................................................... 2, 10

Cal. Labor Code § 2699.3(d) ............................................................................. 10

Cal. Labor Code § 2699.5 .................................................................................. 10

Cal. Labor Code § 2699(f)(2) ............................................................................ 11

Cal. Labor Code § 512 ................................................................................... 2,10

iv
FPDOCS 34121516.7

I.    **NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. sections 1332, 1441, 1446 and 1453, Defendants KINDER MORGAN G.P., INC., KINDER MORGAN TERMINALS, INC., and KINDER MORGAN BULK TERMINALS LLC (collectively "Defendants"), by and through their attorneys of record, hereby remove the above-entitled action from the Superior Court of the State of California in and for the County of Alameda, to the United States District Court for the Northern District of California, on the following grounds:

II.   **PAPERS FROM REMOVED ACTION**

1.    On May 2, 2018, Plaintiff Steven M. Bailey filed a Complaint in the Superior Court of the State of California in and for the County of Alameda styled *Steven M. Bailey v. Kinder-Morgan G.P., Inc., et al.,* Case No. HG18903323.

2.    Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of Plaintiff's Complaint, filed in the Superior Court of the State of California, County of Alameda, along with a copy of the Summons and all other materials served on Defendants by Plaintiff, are attached hereto as Exhibit 1.  Exhibit 1 constitutes all process, pleadings, and orders known by Defendants to exist in this action.  A copy of the Answer to the Complaint filed by Defendants on June 7, 2018, is attached hereto as Exhibit 2.  Defendants are informed and believe that the documents provided in Exhibits 1 and 2 hereto constitute the operative pleadings in the state court case file in this matter.

III.  **NATURE OF REMOVED CASE**

3.    Among other things, Plaintiff alleges that Defendants deprived, and did not authorize or permit employees to take lawful meal and rest periods. (Complaint ¶¶25-28.) Plaintiff alleges that Defendants required their employees to work 12-hour shifts, but required employees "to stay at their work station at all time during their 12-hour shifts." (Complaint ¶¶20, 21.)  Plaintiff also alleges that Defendants' "company-wide staffing and scheduling policies deprived Plaintiff and class members of their lawful meal periods and rest breaks."  (Complaint ¶22.)  Plaintiff further alleges that Defendants failed to "schedule or provide meal periods," "relieve [employees] for their meal periods," "provide [employees] their second meal periods,"

1
NOTICE OF REMOVAL

authorize or permit "lawful rest breaks." (Compliant ¶¶23-28.)  Plaintiff alleges that as a result, Defendants failed to timely pay employees all wages owed, correctly record meal periods, and provide complete and accurate wage statements.  (Complaint ¶¶29-31.)

4.     Based on this conduct, Plaintiff asserts causes of action, under: (1) California Labor Code §§226.7 and 512(a); (2) California Labor Code §226.7; (3) California Labor Code §§1194, 1194.2, 1197 and the California Industrial Welfare Commission ("IWC") Minimum Wage Order; (4) California Labor Code §§201 and 202; (5) California Labor Code §226(a); (6) California Labor Code §2698 ("PAGA"); and (7) California's Unfair Competition Law ("UCL"), Business and Professions Code §17200, *et seq.*

5.     Plaintiff seeks to represent a putative class consisting of "[a]ll current and/or former non-exempt employees that worked for Defendants in California, within four years prior to the filing of his Complaint, as Pipeline Operators and Pipeline Controllers."  (Complaint ¶34.)

## IV.    **REMOVAL IS TIMELY**

6.     As required by 28 U.S.C. section 1446(b), this petition is filed within thirty (30) days after Defendants were served with the Summons and Complaint. Specifically, on May 9, 2018, Plaintiff served his Complaint upon each of the Defendants' agent for service of process in California (Capitol Corporate Services, Inc.). (Declaration of Juan C. Araneda ("Araneda Decl."), ¶¶5-7 and Exhibits D-F thereto.)

7.     The defendants designated Does 1 through 10 in Plaintiff's Complaint are fictitious defendants, and have not been served to Defendants' knowledge. (*See* Complaint, ¶13.) Un-served defendants need not join in the notice of removal. *See Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1193 n.1 (9th Cir. 1988).

## V.    **THE COURT HAS DIVERSITY JURISDICTION**

8.     Removal of a case to federal court is governed in part by 28 U.S.C section 1441, which generally allows removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a).

9.      Pursuant to 28 U.S.C. section 1332, the United States District Court for the Northern District of California has original jurisdiction over the parties and the subject matter of

this action because it is an action arising in Alameda County, the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and it is an action between citizens of different states. 28 U.S.C. §§ 1332(a), 1441.

10. Defendant KINDER MORGAN G.P., INC., is a Delaware corporation, with its principal place of business in Texas. (Araneda Decl., ¶ 2, and Exhibit A thereto; Complaint ¶10.) Defendant KINDER MORGAN G.P., INC., maintains its executive office in Texas, and the management of Defendant KINDER MORGAN G.P., INC.'s operations and finances is performed in Texas. (Araneda Decl., ¶2; Complaint ¶10.)

11. Defendant KINDER MORGAN TERMINALS, INC., is a Delaware corporation, with its principal place of business in Texas. (Araneda Decl., ¶3, and Exhibit B thereto; Complaint ¶11.) Defendant KINDER MORGAN TERMINALS, INC., maintains its executive office in Texas, and the management of Defendant KINDER MORGAN TERMINALS, INC.'s operations and finances is performed in Texas. (Araneda Decl., ¶3; Complaint ¶11.)

12. Defendant KINDER MORGAN BULK TERMINALS LLC, is a Louisiana limited liability company, with its principal place of business in Texas. (Araneda Decl., ¶4, and Exhibit C thereto; Complaint ¶12.) Its sole manager is a limited partnership, with its principal place of business in Texas.  (Araneda Decl., ¶4, and Exhibit C thereto.) KINDER MORGAN BULK TERMINALS LLC, maintains its executive office in Texas, and the management of KINDER MORGAN BULK TERMINALS LLC 's operations and finances is performed in Texas. (Araneda Decl., ¶4; Complaint ¶12.)

13. Plaintiff is a citizen of California. (Complaint ¶8.)  Additionally, the citizenship of fictitious defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(b)(1). Accordingly, this action is between citizens of different states, specifically California and Texas and Louisiana. This complete diversity of citizenship existed at the time Plaintiff filed his Complaint and it exists at the time of this removal.

///

///

///

## VI.    AMOUNT IN CONTROVERSY - DIVERSITY JURISDICTION

14.    Plaintiff alleges claims on his own behalf for damages that exceed $75,000. As discussed further below, Plaintiff's Complaint seeks unquantified damages for purported violations of the California Labor Code.

15.    In cases where the state court complaint is silent or unclear as to the amount of damages sought by the plaintiff, a defendant must establish that the amount in controversy exceeds $75,000. *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 376 (9th Cir. 1997); *Gaus v. Miles, Inc.,* 980 F.2d 564, 566-67 (9th Cir. 1992). The "amount in controversy" requirement is satisfied by setting forth, in the removal petition, underlying facts supporting defendant's assertion that the amount in controversy exceeds $75,000. *Richmond v. Allstate Ins. Co.,* 897 F. Supp. 447, 450 (S.D. Cal. 1995).

16.    In determining the amount in controversy for purposes of assessing the propriety of a removal, a Court must assume that the allegations in the state court complaint are true and must assume that a jury will return a verdict for the plaintiff on all claims made in the complaint. *See, White v. FCI USA, Inc.,* 319 F.3d 672, 674-76 (5th Cir. 2003); s*ee also, Cain v. Hartford Life & Acc. Ins. Co.*, 890 F. Supp. 2d 1246, 1249 (C.D. Cal. 2012) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." (internal quotation marks omitted)).  The Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and does not require evidentiary submissions.  *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014).  As set forth below, even a low estimate of what Plaintiff alone could recover if the jury ruled for him alone on all of his claims in his Complaint would unavoidably result in an overall recovery that would exceed $75,000.

### A.    Bases for Calculation of Amount In Controversy

17.    In determining the amount in controversy, Defendants rely on the allegations in Plaintiff's Complaint and the evidence submitted as follows:

a.    **Time period**:  Plaintiff's Complaint seeks to recover for four years predating the filing of the Complaint to the present.  (Complaint ¶34.)  However, Defendants have

calculated the amount in controversy from May 2, 2014 through Plaintiff's termination of employment on July 7, 2017 ("Plaintiff's Time Period"). (Complaint ¶8.) Defendants have also factored in statutes of limitations where appropriate. [1]

b. **Pay periods**: Plaintiff was paid on a bi-weekly basis, with pay periods occurring every other Friday. (Declaration of Jeff Collins ("Collins Decl."), ¶9). Thus, Plaintiff experienced 26 pay periods per year. During Plaintiff's Time Period, Plaintiff experienced 166 workweeks and, thus, experienced 83 pay periods. (id. at ¶10)

c. **Workweeks**: As noted, based on Plaintiff's employment, Defendants assumed that there were only 166 work weeks during Plaintiff's Time Period when calculating how many meal periods and rest breaks per year allegedly were missed by Plaintiff. Plaintiff worked, on average, just over 3 days per week. (Collins Decl., ¶11). Nevertheless, Defendants treated each of the work weeks during Plaintiff's Time Period as consisting of only three (3) work days per workweek, resulting in six (6) days per pay period, or 156 work days per year (6 days x 26 pay periods). Over the 83 pay periods during Plaintiff's Time Period, this amounts to 498 workdays (6 days x 83 pay periods).

d. **Rate of Pay**: Plaintiff alleges his rate of pay being $31.86. (Complaint ¶¶8, 19.)

**B.** **Calculation of Amount In Controversy**

18. Defendants provide below calculations of the amount in controversy for each of Plaintiff's claim:

19. **Unpaid Meal Periods and Rest Breaks (First and Second Causes of Action)**:

a. **Plaintiff's allegations**: Plaintiff alleges that "Defendants required Plaintiff … to work 12-hour shifts – from 6 pm to 6 am or 6 am to 6 pm." (Complaint ¶¶20.) Additionally, Plaintiff alleges that "Defendants required Plaintiff … to stay at [his] station

---

[1] For purposes of this filing, Defendants have taken the conservative approach of applying actual statutes of limitations to each claim, even though Plaintiff appears to contend that he may recover over a four-year period for all claims. Generally, removing defendants need not factor in affirmative defenses like statutes of limitations. *See, e.g.*, *Lara v. Trimac Transp. Servs. (W.) Inc.*, No. CV 10-4280, 2010 WL 3119366, at *3 (C.D. Cal. Aug. 6, 2010) ("The amount in controversy is not the same as the amount ultimately recovered. As a consequence of that proposition, affirmative defenses, counterclaims, and potential offsets may not be invoked to demonstrate the amount-in-controversy is actually less than the jurisdictional minimum." (citations omitted)).

at all time during [his] 12-hour shift." (Complaint ¶21; emphasis added). Further, plaintiff alleges that "Defendants' company-wide staffing and scheduling policies deprived Plaintiff … of their lawful meal periods and rest breaks." (Complaint ¶22.) Thus, based on Plaintiff's work schedule discussed above, Plaintiff's allegations indicate six missed meal periods and six missed rest breaks per pay period.

b. **Statute of Limitations**:  Plaintiff has brought the UCL claim based on his missed meal periods and rest breaks (Complaint ¶96), which lengthens the statute of limitations period to four years.  Generally, a three-year statute of limitations applies to labor code violations. *See* Cal. Civ. Proc. Code § 338; *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1402 (2010).  However, the UCL allows recovery of restitution of unpaid wages for a four-year period, which effectively lengthens the normal three-year period for labor code violations. *See, e.g.*, *Van v. Language Line Servs., Inc.*, No. 14-CV-03791-LHK, 2016 WL 3143951, at *9 (N.D. Cal. June 6, 2016); *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 963 (N.D. Cal. 2016).  Therefore, Defendants have calculated the amount in controversy for Plaintiff's meal period and rest break claims during the entirety of Plaintiff's Time Period.

c. **Premium Wage Amount**: Section 226.7 provides that "[i]f an employer fails to provide an employee a meal or rest or recovery period . . .  the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."  As explained above, Defendants use the hourly wage rate of $31.86 alleged by Plaintiff in the Complaint.

d. **Calculation**: Defendants calculated Plaintiff's alleged meal period and rest break claims recovery as follows.  Defendants multiplied the number of pay periods during Plaintiff's Time Period times the number of missed rest breaks and rest breaks per pay period times the premium wage rate.  The results are as follows: (83 pay periods x 6 meal periods per pay period x $31.86 premium wage per meal period = $15,866.28) + (83 pay

FPDOCS 34121516.7

1    periods x 6 rest breaks per pay period x $31.86 premium wage per rest break = $15,866.28)

2    = $31,732.56.

3    20.    **Unpaid Minimum Wage/Liquidated Damages (Third Cause of Action):**

4        a.    **Plaintiff's allegations**: Plaintiff alleges that "Defendants paid Plaintiff … less

5    than minimum wages when it required them to work during meal period and rest breaks;

6    and when it failed to pay them proper compensation for all hours worked, including time

7    worked during their missed and/or interrupted meal and/or rest periods." (Complaint ¶60.)

8    As discussed above, Plaintiff's allegations indicate six missed meal periods and six missed

9    rest breaks per pay period.  As such, Defendants assume six unpaid hours per pay period.

10        b.    **Statute of Limitations**:  Plaintiff has also brought his UCL claim based on the

11    alleged failure to pay wages for all hours worked (Complaint ¶97), which lengthens the

12    statute of limitations period to four years.  The damages provided by California Labor

13    Code section 1194 are recoverable under the UCL.  *See, e.g.*, *Van*, 2016 WL 3143951, at

14    *9.  Therefore, Defendants have calculated the amount in controversy for Plaintiff's meal

15    period and rest break claims over the entirety of Plaintiff's Time Period.

16        c.    **Unpaid Wage Amount**: Under Section 1194, "any employee receiving less than

17    the legal minimum wage … applicable to the employee is entitled to recover in civil action

18    the unpaid balance of the full amount of this minimum wage …."  As explained above,

19    Defendants use the hourly wage rate of $31.86 alleged by Plaintiff in the Complaint.

20        d.    **Calculation of Unpaid Wages**: Defendants calculated Plaintiff's unpaid wage

21    recovery as follows.  Defendants multiplied the number of pay periods during Plaintiff's

22    Time Period times the number of work days per pay period times Plaintiff's wage rate.

23    The results are as follows: 83 pay periods x 6 work days per pay period x $31.86 wage

24    rate = $15,866.28.

25        e.    **Liquidated Damages**: Plaintiff's fourth cause of action also asserts a purported

26    violation of California Labor Code section 1194.2, which provides that "[i]n any action

27    under Section … 1194 … an employee shall be entitled to recover liquidated damages in

28

7
NOTICE OF REMOVAL

1    an amount equal to the wages unlawfully unpaid and interest thereon." As such, under

2    his allegations, Plaintiff would recover an additional <u>$15,866.28</u>.

3        f.   **Penalty Amount:** In addition to damages under California Labor Code section

4    1994 and liquidated damages under Section 1194.2, Section 1197.1 provides for penalties

5    of $100 "[f]or any initial violation that is intentionally committed … for each underpaid

6    employee for each pay period for which the employee is underpaid" and penalties of $250

7    "[f]or each subsequent violation for the same specific offense…." Cal. Lab. Code §§

8    1197.1(a)(1), 1197.1(a)(2).  Defendants thus apply a penalty of $100 for the initial pay

9    period that Plaintiff was allegedly underpaid and $250 per subsequent pay periods that

10   Plaintiff was underpaid.  Given the one-year statute of limitations under California Code

11   of Civil Procedure section 340, the filing of the Complaint was on May 2, 2018, and

12   Plaintiff's termination of employment was on July 7, 2017, Plaintiff would only have

13   experienced 5 pay periods from May 2, 2017 through July 7, 2017. Thus, the calculation

14   for Section 1197.1 penalties, is as follows: (1 pay period x $100 per initial pay period) +

15   (4 pay periods x $250 per subsequent pay period) = <u>$1,100</u>.

16   21.   **Failure To Provide Wages Upon Termination (Fourth Cause of Action)**:

17       a.   **Plaintiff's allegations**:  Plaintiff alleges that "Defendants failed to timely pay

18   Plaintiff … for all wages owed …." (Complaint ¶29.)  Plaintiff also alleges that Plaintiff's

19   "final paycheck did not include all wages owed to Plaintiff …." (Complaint ¶67.)   In

20   addition, Plaintiff alleges, "Plaintiff and Class members are entitled to recover from

21   Defendants their additionally accruing wages for each day that they are not paid, at their

22   regular hourly rate of pay, up to 30 days maximum pursuant to California Labor Code §

23   203." (Complaint ¶70.)

24       b.   **Rate of pay**:  California Labor Code section 203 provides that "[i]f an employer

25   willfully fails to pay . . . any wages of an employee who is discharged or who quits, the

26   wages of the employee shall continue as a penalty from the due date thereof *at the same*

27   *rate* until paid . . . but the wages shall not continue for more than 30 days." Cal. Labor

28   Code § 226(a) (emphasis added). Under Section 203, "unpaid wages continue to accrue

8

NOTICE OF REMOVAL

on a daily basis for up to a 30-day period.  Penalties accrue not only on the days that the employee might have worked, but also on nonworkdays." *Mamika v. Barca*, 68 Cal. App. 4th 487, 492 (1998); *see also Andrade v. Arby's Rest. Grp., Inc.*, No. 15-CV-03175 NC, 2016 WL 7211141, at *13 (N.D. Cal. Dec. 13, 2016) (noting that, "under § 203, damages accrue for 30 calendar days straight").  As Plaintiff's last day of employment was July 7, 2017, more than 30 days have passed since his termination.

c.  **Statute of Limitations**: Although Plaintiff alleges a four-year statute of limitations for all claims, Defendants assume that Section 203 claims are only subject to the three-year statute of limitations period for Labor Code violations.  Courts have held that the UCL does not lengthen the recovery period for Section 203 claims, because Section 203's statutory penalty does not constitute unpaid wages.  *See, e.g.*, *Montecino v. Spherion Corp.*, 427 F. Supp. 2d 965, 968 (C.D. Cal. 2006); *Pineda*, 50 Cal. 4th at 1402.  Thus, recovery under Section 203 is limited to the three-year statute of limitations.  *Pineda*, 50 Cal. 4th at 1400–02.  As Plaintiff alleges his termination occurred on July 7, 2017, his claim falls within the three-year statute of limitations.

d.  **Calculation**: To calculate damages under Section 203, Defendants multiplied the Plaintiff's hourly rate of $31.86 times 8 hours per day times 30 days, which amounts to $7,646.40.

22.  **Non-Complaint Wage Statements (Fifth Cause of Action):**

a.  **Plaintiff's allegations**: Plaintiff alleges that Defendants violated California Labor Code section 226 by failing to provide accurate wage statements and that Defendants are consequently liable for damages. (Complaint ¶¶30-31, 73-74.)  As discussed above in the discussion of the violation rates for Plaintiff's meal period and rest break claims, Plaintiff's allegations indicate that at least six (6) violations of each type occurred each pay period.   Even assuming that only one violation of *either* type occurred each pay period, Plaintiff's complaint would sustain a violation under Section 226, as each pay period's wage statement purportedly would be inaccurate.  That is, each wage statement purportedly would inaccurately reflect total hours worked or total wages earned.

9

b. **Statute of Limitations**: The statute of limitations for Section 226 penalties is one year. *See* Cal. Civ. Proc. Code §340.

c. **Penalty Amount**: Section 226 provides that "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer [to issue accurate wage statements] is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Cal. Lab. Code § 226(e)(1). Defendants thus apply a penalty of $50 for Plaintiff's first allegedly inaccurate wage statement and a $100 penalty for all subsequent wage statements.

d. **Calculation**: Because of the one-year statute of limitations under California Code of Civil Procedure section 340, the filing of the Complaint was on May 2, 2018, and Plaintiff's termination of employment was on July 7, 2017, Plaintiff would only have experienced 5 pay periods from May 2, 2017 through July 7, 2017. Thus, the calculation for Section 226 penalties, is as follows: (1 pay period x $50 per initial pay period) + (4 pay periods x $100 per subsequent pay period) = $450.

23. **PAGA Penalties (Sixth Cause of Action)**:

a. **Plaintiff's allegations**: Plaintiff asserts a claim under California Labor Code section 2698, *et seq.*, which permits the recovery of civil penalties for violations of Labor Code sections enumerated in California Labor Code section 2699.5, including those sections Plaintiff alleges in his Complaint were violated. (Complaint ¶¶80, 88.) Plaintiff alleges that numerous sections of the California Labor Code occurred, including violations of Sections (1) 226.7 and 512, (2) 1194 and 1197, (3) 201, 202, and 203, (4) 226(a), and (5) 1198. (Complaint ¶¶88-89.) Thus, assuming Plaintiff's allegations that a violation of each type occurred each pay period as true, Plaintiff would have sustained at least 5 violations under PAGA per pay period.

b. **Statute of Limitations**: The statute of limitations for PAGA penalties is one year and 65 days. *See* Cal. Code of Civ. Proc. §340; Cal. Lab Code §2699.3(d).

c. **Penalty Amount**: California Labor Code section 2699(f)(2) provides that "the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation." Moreover, in considering penalties under PAGA for removal purposes, Defendants considers only 25% of the total possible recovery to calculate the amount in controversy. *See, e.g., Smith v. Brinker Int'l, Inc.*, No. C 10-0213 VRW, 2010 WL 1838726 *2, 5 (N.D. Cal. May 5, 2010). Defendants thus apply a penalty of $100 for the initial violation to Plaintiff and two $200 penalties for each of Plaintiff's pay periods for subsequent violations, within Plaintiff's Time Period, and multiply that by 25%.

d. **Calculation**: Because of the one-year statute of limitations under California Code of Civil Procedure section 340, the filing of the Complaint was on May 2, 2018, and Plaintiff's termination of employment was on July 7, 2017, Plaintiff would only have experienced 5 pay periods from May 2, 2017 through July 7, 2017. Thus, the calculation for PAGA penalties, is as follows: (1 pay period x $100 per first violation) + (4 pay periods x $200 per subsequent violations) = $900. 25% of this amount is <u>$225</u>.

24. **Attorneys' Fees**: There is no question that attorneys' fees may be included in the Court's analysis of the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). In *Simmons v. PCR Technology*, 209 F. Supp. 2d 1029 (N.D. Cal. 2002), the Court found that attorneys' fees "necessarily accrue until the action is resolved. Thus, the Ninth Circuit must have anticipated that district courts would project fees beyond removal. The court determines the amount in controversy based on the damages that can reasonably be anticipated at the time of removal. Similarly, the measure of fees should be the amount that can reasonably be anticipated at the time of removal, not merely those already incurred." *Id.* at 1034-35 (footnote omitted). Thus, if Plaintiff prevails on his causes of action, he would be entitled to recover reasonable attorneys' fees. *See,* Cal. Lab. Code § 218.5; Cal. Code Civ. Proc. §1021.5. Even a very conservative estimate of Plaintiff's counsel's likely attorneys' fees if they litigated this case through pleadings, discovery, motions, pre-trial and trial is 25% of $72,886.52 (the sum

11

FPDOCS 34121516.7

of the claims outlined above), (or $18,221.63).

25.    Based on the foregoing, the total amount in controversy for Plaintiff's claims alone is as follows:

| Claim | Amount |
|---|---|
| Meal Period<br>(First Cause of Action) | $15,866.28 |
| Rest Break<br>(Second Cause of Action) | $15,866.28 |
| Unpaid Wages<br>(Third Cause of Action) | $15,866.28 |
| Liquidated Damages<br>(Third Cause of Action) | $15,866.28 |
| Labor Code 1197.1 Penalties<br>(Third Cause of Action) | $1,100.00 |
| Waiting Time Penalty<br>(Fourth Cause of Action) | $7,646.40 |
| Non-Compliant Wage Statements<br>(Fifth Cause of Action) | $450.00 |
| PAGA Penalties<br>(Sixth Cause of Action) | $225.00 |
| Attorneys' Fees<br>(25% of sum of above amounts) | $18,221.63 |
| **Total** | $91,108.15[2] |

26.    Based upon the foregoing, it is respectfully submitted that the amount in controversy exceeds $75,000, and that this action is properly removed to this Court.

///

///

///

///

---

[2] Under California Labor Code section 218.6, if he prevails, Plaintiff would be entitled to interest at a rate of 10% per annum, which would add approximately $33,826.63 to the amount in controversy. This amount is based on the sum under Plaintiff's alleged claims, excluding attorneys' fees.

12

NOTICE OF REMOVAL

1    **VII.    THE COURT HAS JURISDICTION UNDER THE CLASS ACTION FAIRNESS**

2    **ACT**

3          27.    Removal of this action is also proper under the Class Action Fairness Act of 2005

4    ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified as 28 U.S.C. §§ 1332(d), 1441, 1453, 1603,

5    1711–1715).  CAFA confers federal jurisdiction over class actions involving:  (a) minimal

6    diversity (i.e., diversity between any putative class member and any defendant); (b) at least 100

7    putative class members; and (c) at least $5 million in controversy, exclusive of interest and

8    costs.  Although the burden rests on the removing party to demonstrate that CAFA's

9    jurisdictional requirements are met, the party opposing jurisdiction under CAFA bears the

10   burden of demonstrating that any exception to CAFA jurisdiction applies.  *Serrano v. 180*

11   *Connect, Inc.*, 478 F.3d 1018, 1022–24 (9th Cir. 2007).[3]  As demonstrated below, this case

12   meets CAFA's requirements.

13   **VIII.   DIVERSITY EXISTS UNDER CAFA**

14         28.    The parties are diverse.  They are, and were at all relevant times, citizens of

15   different states.  *See* 28 U.S.C. § 1332(d)(2)(A).

16         29.    Plaintiff concedes he is a California citizen. (Complaint ¶8.) He seeks to represent

17   a class of employees who worked for Defendants in California. (Complaint ¶¶10-12, 34.)

18         30.    A corporation is deemed to be a citizen of the state in which it has been

19   incorporated and where it has its principal place of business.  28 U.S.C. § 1332(c)(1).  As

20   discussed above, Defendants KINDER MORGAN G.P., INC., and KINDER MORGAN

21   TERMINALS, INC., are citizens of Texas, and Defendant KINDER MORGAN BULK

22   TERMINALS LLC is a citizen of Texas and Louisiana.

23   **IX.    THE PUTATIVE CLASS EXCEEDS 100**

24         31.    The Court looks to a plaintiff's allegations respecting class size for purposes of

25   removal.  *See Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013)

26   ───────────────
     [3] CAFA's "home state" and "local controversy" exceptions potentially apply only if "the primary
27   defendants are citizens of the State in which the action was originally filed," 28 U.S.C. § 1332(d)(3), or if
     at least one defendant "is a citizen of the State in which the action was originally filed," 28 U.S.C. §
28   1332(d)(4)(A)(i)(II)(cc).  As discussed herein, Defendants are not citizens of California.  Therefore,
     neither statutory exception applies.

1    (CAFA requirement of 100 class members satisfied by plaintiff's complaint).

2        32.    Plaintiff purports to bring a claim on behalf of himself and "[a]ll current and/or

3    former non-exempt employees that worked for Defendants in California, within four years prior

4    to the filing of his Complaint, as Pipeline Operators and Pipeline Controllers." (Complaint ¶34.)

5    Plaintiff alleges that the putative class is "estimated to be greater than one hundred (100)

6    individuals" and "[t]he member of the class (and each subclass, if any) are so numerous that

7    joinder of all members would be unfeasible and impracticable." (Complaint ¶38(a).)

8        33.    In the four years preceding the filing of the complaint and continuing through

9    February 2, 2018, 200 individuals worked as Pipeline Operators and Pipeline Controllers in

10   California. (Collins Decl. ¶5.) Thus, the proposed class exceeds 100 members. *See* 28 U.S.C.

11   § 1332(d)(5)(B).

12   ## X.    THE AGGREGATE AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION

13       34.    In determining the amount in controversy, the Court must assume that the

14   allegations in the complaint are true and that a jury will return a verdict for the Plaintiff on all

15   claims in the complaint. *See Cain, supra,* 890 F.Supp.2d at 1249 ("The ultimate inquiry is what

16   amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually*

17   owe." (internal quotation marks omitted)). Additionally, "a defendant's notice of removal need

18   include only a plausible allegation that the amount in controversy exceeds the jurisdictional

19   threshold," and does not require evidentiary submissions. *Dart Cherokee, supra,* 135 S. Ct. at

20   554; *see also Ibarra v. Manheim Invs. Inc.,* 775 F.3d 1193, 1197 (9th Cir. 2015).[4]

21       35.    As pled, the alleged amount in controversy in this putative class action exceeds,

22   in the aggregate $5,000,000, exclusive of interest and costs. Among other things, the Complaint

23   seeks damages and penalties for Defendants' alleged failures to authorize and permit meal

---

24   [4] If a "defendant's assertion of the amount in controversy is contested by plaintiffs," then defendants must
25   put forth evidence establishing the amount in controversy by a preponderance of the evidence. *Ibarra*,
     775 F.3d at 1197 (citing *Dart Cherokee*, 135 S. Ct. at 554). But even this "burden is not daunting, as
26   courts recognize that under this standard a removing defendant is not obligated to research, state, and
     prove the plaintiff's claims for damages." *Ritenour v. Carrington Mortg. Servs. LLC*, No. SACV 16-
27   02011-CJCDFMX, 2017 WL 59069, at *4 (C.D. Cal. Jan. 5, 2017) (internal quotation marks omitted); *see
     also Unutoa v. Interstate Hotels & Resorts, Inc.*, No. 2:14-CV-09809-SVW-PJ, 2015 WL 898512, at *3
28   (C.D. Cal. Mar. 3, 2015) ("[A] removing defendant is not required to go so far as to prove Plaintiff's case
     for him by proving the actual rates of violation.").

periods and rest breaks, damages and penalties for inaccurate wage statements under Labor Code section 226 (which permits a maximum penalty of $4,000 per employee), waiting time penalties, and restitution for violation of section 17200 of the Business and Professions Code. The Complaint also seeks payment of prejudgment interest, attorneys' fees and costs.

36.    **Unpaid Meal Periods and Rest Breaks (First and Second Causes of Action)**:

a.    **Time Period:** Plaintiff's Complaint seeks to recover for four years predating the filing of the Complaint to the present. (Complaint ¶34.) Thus, Defendants calculate the amount in controversy from May 2, 2014 (four years predating filing) to February 2, 2018.

b.    **Number of Putative Class Members Per Each Year of Putative Class Period**: Plaintiff defines the putative class as "[a]ll current and/or former non-exempt employees that worked for Defendants in California, within four years prior to the filing of his Complaint, as Pipeline Operators and Pipeline Controllers." (Complaint ¶34.) Based on this description, Defendants have determined the number of putative class members from year to year within the applicable class period as follows:

(1)    May 2, 2014-May 1, 2015: 168

(2)    May 2, 2015-May 1, 2016: 165

(3)    May 2, 2016-May 1, 2017: 174

(4)    May 2, 2017-February 1, 2018: 169

(Collins Decl. ¶6).

c.    **Pay Periods**: Plaintiff and putative class members were paid on a bi-weekly basis, with pay periods occurring every other Friday. (Collins Decl. ¶9). Thus, putative class members experienced 26 pay periods per year.

d.    **Work Days**:   Defendants assumed very conservatively that putative class members only worked three (3) days per week (or six (6) days per pay period) when calculating how many meal periods and rest breaks per year allegedly were missed. First, Defendants treated each of the 26 pay periods per year as consisting of 6 work days per pay period, resulting in 156 work days per putative class member per year (6 days per pay period x 26 pay periods = 156 days).

e. **Rate of Pay**: During the class period of May 2, 2014 to February 2, 2018, the hourly rate of the putative class members ranged from $23.40 to $47.39. (Collins Decl. ¶7). The average hourly rate over the 200 putative class members was $34.46. (Id.) Defendants use this as a reasonable estimate for premium wage purposes.

f. **Violation Rate**:  As noted, Plaintiff alleges that "Defendants required Plaintiff and class members to work 12-hour shifts – from 6 pm to 6 am or 6 am to 6 pm." (Complaint ¶¶20.)  Additionally, Plaintiff alleges that "Defendants required Plaintiff and class members to stay at their station <u>at all time</u> during their 12-hour shift."  (Complaint ¶21; emphasis added).  Further, plaintiff alleges that "Defendants' company-wide staffing and scheduling policies deprived Plaintiff and class members of their lawful meal periods and rest breaks."  (Complaint ¶22.) Defendants can rely on allegations in the complaint to establish violation rate assumptions for each claim.  *See, e.g.*, *Sanchez v. The Ritz Carlton*, No. CV 15-3484 PSG (PJWx), 2015 WL 4919972, at *4 (C.D. Cal. Aug. 17, 2015) (approving a defendant's assumed violation rates based on complaint language); *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK JCX, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (same); *Unutoa*, 2015 WL 898512, at *3 (same); *Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (same).  For example, "allegations of a 'uniform policy,' 'systematic scheme,' and violations occurring at 'all material times' are the types of allegations found sufficient to assume a 100% violation rate."  *Dawson v. Hitco Carbon Composites, Inc.*, No. CV16-7337 PSG (FFMx), 2016 WL 7235629, at *3 (C.D. Cal. Dec. 14, 2016) (citations omitted).

Here, Plaintiff's allegations indicate that the claimed violation rate is 100%. As such, based on the conservative estimate that class members worked only three days per week, Defendants assume a violation rate of three missed meal periods and three missed rest breaks per week, or six missed meal periods and six missed rest breaks per pay period. Thus the total meal periods and rest breaks per period are assumed to be 12.

g. **Statute of Limitations**:  As described above, Plaintiff's UCL claim lengthens the

NOTICE OF REMOVAL

FPDOCS 34121516.7

statute of limitations period to four years for his meal period and rest break claims.  The premium wage provided by § 226.7 for missed breaks is recoverable under the UCL.  *See, e.g.*, *Van*, supra, 2016 WL 3143951, at *9; *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 963 (N.D. Cal. 2016).  Therefore, Defendants have calculated the amount in controversy for Plaintiff's meal period and rest break claims over a four-year period.

h.  **Premium Wage Amount**: Section 226.7 provides that "[i]f an employer fails to provide an employee a meal or rest or recovery period . . .  the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."  As explained above, Defendants use the average of the putative class members' hourly wage rate.

i.  **Calculation**: Defendants calculated the alleged meal period rest break claims recovery as follows.  For each year, Defendants multiplied the number of pay periods times the number of missed meal periods and rest breaks per pay period times the number of putative class members employed during that year times the premium wage rate.  The results are as follows:

| Year | Class Size | Pay Periods | Premium Wage | Missed Meal and Rest Breaks per pay period | Total |
|---|---|---|---|---|---|
| May 2, 2014 – May 1, 2015 | 168 | 26 | $34.46 | 12 | $1,806,255.36 |
| May 2, 2015 – May 1, 2016 | 165 | 26 | $34.46 | 12 | $1,774,000.80 |
| May 2, 2016 – May 1, 2017 | 174 | 26 | $34.46 | 12 | $1,870,764.48 |
| May 2, 2017- February 1, 2018 | 169 | 26 | $34.46 | 12 | $1,817,006.88 |
| **TOTAL** | | | | | **$7,268,027.52** |

37.    **Failure To Provide Wages Upon Termination (Fourth Cause of Action)**:

a.    **Number of Separated Class members**:   The total number of putative class members who were determined to have quit or discharged since May 2, 2015 through February 2, 2018 total 40.  (Collins Decl. ¶8).

b.    **Rate of pay**:  California Labor Code section 203 provides that "[i]f an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof *at the same rate* until paid . . . but the wages shall not continue for more than 30 days." Cal. Labor Code § 226(a) (emphasis added). "Penalty amount[s] [under § 203] are calculated by multiplying the number of former employees in the proposed class by thirty days' wages, while, in turn, thirty days' wages can be calculated by multiplying the average number of hours worked by the average rate of pay." *Ritenour*, 2017 WL 59069, at *2 (internal quotation marks omitted).   Under Section 203, "unpaid wages continue to accrue on a daily basis for up to a 30-day period.  Penalties accrue not only on the days that the employee might have worked, but also on nonworkdays." *Mamika , supra,* 68 Cal. App. 4th at 492 (1998); *see also Andrade, supra,* 2016 WL 7211141, at *13 (noting that, "under § 203, damages accrue for 30 calendar days straight").   To calculate damages under Section 203, Defendants multiplied the average of the putative class members' hourly wage rate (as discussed above) times 8 hours per day times 30 days.

c.    **Violation Rate**: Plaintiff alleges that Defendants did not pay the full wages due each separated class member upon separation.  (Complaint ¶66-67.)  Even assuming each separated class member only suffered one missed meal period or one missed rest break during the entire class period, he or she would still have a Section 203 claim, based on the wages for that single incident. Accordingly, the Complaint supports a 100% violation rate for separated employees and the full 30-days' wages penalty for each employee.  *See id.* (alleging each separated class member is due the full 30-days' wages under § 203); *see also, Gomez v. Michaels Stores, Inc.*, No. EDCV 15-2328-JGB-DTBx, 2016 WL 738196, at *3 (C.D. Cal. Feb. 22, 2016) ("Plaintiff does not allege, and submits no evidence

indicating, that [defendant] at any time paid a single member of the FAC's 'Waiting Time Penalties Class' wages due after the class member's termination but before the thirty day statutory period expired.  Accordingly, the Court finds [defendant's] assumption of the thirty day maximum wage penalty reasonable."); *Salcido v. Evolution Fresh, Inc.*, No. 2:14-cv-09223-SVW-PLA, 2016 WL 79381, at *7 (C.D. Cal. Jan. 6, 2012) (holding that "it can assume a full thirty-day penalty because the allegation is that [defendant] never paid employees in full and therefore would never have paid former employees all that they were due upon leaving the company"); *Tajonar v. Echosphere, LLC.*, No. 14-cv-2732-LAB (RBB), 2015 WL 4064642, at *3 (S.D. Cal. July 2, 2015) (same).

　　　d.　**Statute of Limitations**: Defendants assume that Section 203 claims are only subject to the three-year statute of limitations period for Labor Code violations.  Courts have held that the UCL does not lengthen the recovery period for Section 203 claims, because Section 203's statutory penalty does not constitute unpaid wages.  *See, e.g.*, *Montecino v. Spherion Corp.*, 427 F. Supp. 2d 965, 968 (C.D. Cal. 2006); *Pineda*, 50 Cal. 4th at 1402.  Thus, recovery under Section 203 is limited to the three-year statute of limitations.  *Pineda*, 50 Cal. 4th at 1400–02.

　　　e.　**Calculation**: Defendants calculated the alleged unpaid final wages as follows.  Defendants multiplied the number of separated class members by 8 hours per day by 30 days by the average of the putative class members' hourly wage rate.  The results are as follows: 40 class members x 8.0 hours per day x 30 days x 34.46 per hour = <u>$330,816</u>.

　　　38.　As described above, Plaintiff's claims for missed meal period, missed rest breaks and waiting time penalties alone put far more than $5,000,000 in controversy. As noted, these three claims alone would amount to <u>$7,598,843.52</u>. This figure does not include Plaintiff's claims for failure to pay minimum wage, non-compliant wage statements and PAGA penalties.

　　　39.　**Attorneys' Fees**:  The above numbers also do not account for attorneys' fees.  "[T]he Ninth Circuit has established 25% of the common fund as a benchmark award for attorney fees."  *Giannini v. Northwestern Mut. Life Ins. Co.*, 2012 WL 1535196, at *4 (N.D. Cal. Apr. 30, 2012); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

19

Accordingly, "it is not unreasonable to rely on this estimate using the common fund method" for removal. *Giannini* 2012 WL 1535196, at *21. Plaintiff's theoretical attorneys' fees would therefore amount to an *additional* $1,899,710.88 [$7,598,843.52 x 25% = $1,899,710.88], and bringing the total in excess of $9,498,554.40.

## XI.    VENUE

40.    This action is now pending in Superior Court of the State of California, County of Alameda, and thus may be properly removed to the United States District Court for the Northern District of California, sitting in San Francisco or Oakland, pursuant to 28 U.S.C. section 1441(a). *See also* Local Rule 3-2(d).

41.    Promptly after filing of this Notice of Removal, Defendants will file in the Superior Court of the State of California, County of Alameda, a Notice of Filing of Notice of Removal, with a copy of this Notice of Removal attached thereto. A copy of Defendants' Notice of Filing of Notice of Removal is attached hereto as Exhibit 3. Further, Defendants have served upon Plaintiff a copy of this Notice of Removal, and will promptly serve upon Plaintiff a copy of Defendants' Notice of Filing of Notice of Removal.

## XII.    INTRA-DISTRICT ASSIGNMENT

42.    Pursuant to 28 U.S.C. section 1391(a)(2), venue is proper in the United States District Court for the Northern District of California, sitting in San Francisco or Oakland, because this is an action arising in Alameda County. *See* Local Rule 3-2(d).

43.    This Notice of Removal of Action is executed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

DATED:  June 8, 2018                FISHER & PHILLIPS LLP

                                    By: */s/ Juan C. Araneda*
                                        Christopher C. Hoffman
                                        Aaron Olsen
                                        Juan C. Araneda
                                        Attorneys for Defendants
                                        KINDER MORGAN G.P., INC., KINDER
                                        MORGAN TERMINALS, INC., and KINDER
                                        MORGAN BULK TERMINALS LLC

FPDOCS 34121516.7