ABRAHAM MATHEW, SBN 181110
*abraham@mathewandgeorge.com*
JACOB GEORGE, SBN 213612
*jacob@mathewandgeorge.com*
SANG J PARK, SBN 232956
*sang@mathewandgeorge.com*
MATHEW & GEORGE
500 South Grand Avenue, Suite 2050
Los Angeles, California 90071
Telephone:    (310) 478-4349
Fax:          (310) 478-9580

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHER DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN M. BAILEY, individually, on behalf of all others similarly situated, and as a representative of other aggrieved employees, | Case No.: 3-18-cv-03424-TSH |
| | Hon. Thomas S. Hixson |
| | CLASS ACTION |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| KINDER MORGAN G.P., INC., a Delaware corporation; KINDER MORGAN TERMINALS, INC., a Delaware corporation; KINDER MORGAN BULK TERMINALS LLC, a Louisiana company; and DOES 1 to 10, | Date:  May 14, 2020<br>Time:  10 am<br>Place:  Courtroom G—15th Floor |
| Defendants. | |

1    TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

2         PLEASE TAKE NOTICE that on May 14, 2020 at 10 am, in Courtroom G—15th Floor

3    of the United States District Court for the Northern District of California, located at 450 Golden

4    Gate Avenue, San Francisco, CA 94102, Hon. Thomas S. Hixson presiding, Plaintiff Steven

5    Bailey ("Plaintiff" or "Class Representative"), as an individual and on behalf of all others

6    similarly situated, and Defendants Kinder Morgan G.P., Inc., Kinder Morgan Terminals, Inc.

7    and Kinder Morgan Bulk Terminals LLC ("Defendants") (collectively, the "Parties") will, and

8    hereby do, move this Court to:

9         1.    Preliminarily approve the settlement described in the Stipulation and Settlement

10   Agreement of Class Action Claims, and Notice of Pendency and Settlement of Class Action

11   Settlement attached collectively as Exhibit "A" to the Declaration of Sang J Park

12        2.    Conditionally certify the Settlement Class

13        3.    Approve distribution of the proposed Notice of Pendency and Settlement of Class

14   Action Settlement to the Settlement Class

15        4.    Appoint Plaintiff as the Class Representative

16        5.    Appoint Mathew & George and Work Lawyers PC as Class Counsel

17        6.    Appoint CPT Group as the claims administrator, and

18        7.    Set a hearing date for final approval of the settlement.

19        This Motion is based on:  (1) this Notice of Motion and Motion; (2) the Memorandum of

20   Points and Authorities in Support of Motion for Preliminary Approval of Class Action

21   Settlement; (3) Declaration of Sang J Park; (4) Declaration of Justin Lo; (5) the Stipulation and

22   Settlement Agreement of Class Action Claims; (6) the Notice of Pendency and Settlement of

23   Class Action Settlement; (7) the [Proposed] Order Granting Preliminary Approval of Class

24   Action Settlement; (8) the records, pleadings, and papers filed in this action; and (9) such other

25   documentary and oral evidence or argument as may be presented to the Court at or prior to the

26   hearing of this Motion.

27   ///

28   ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

Dated: April 9, 2020                    MATHEW & GEORGE

*/s/ Sang J Park*

By:_____
    Sang J Park

Attorneys for Plaintiff

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

I.     INTRODUCTION……………………………...……………….................     1

II.    FACTS AND PROCEDURE……………………………………………     2

       A.    Overview of Case…………………………………………………….     2

             1.    Plaintiff's theory of case………………………………………     2

       B.    Plaintiff's Counsel thoroughly investigated the factual and legal issues and
             were thus able to objectively assess the Settlement's reasonableness………     3

       C.    Parties settled after mediation........................................................................     4

       D.    Proposed settlement fully resolves Plaintiff's claims....................................     4

             1.    Composition of the Settlement Class...........................................................     4

             2.    Settlement consideration...........................................................................     5

             3.    Release by the Settlement Class.................................................................     5

III.   ARGUMENT…………………………………..................…….…………..……     6

       A.    Court should preliminarily approve the Class Action Settlement.....................     6

       B.    Settlement is the product of arms'-length negotiations and is therefore
             entitled to a presumption of fairness…………………………………………     7

       C.    The relief provided by the Settlement is fair and reasonable…………………     8

             1.    The Class Settlement Amount is within the range of reasonableness……     8

             2.    Plaintiff's Counsel realistically assessed the settlement value of claims..     9

                   a.    Meal period and rest break claims…………………………………...     9

                   b.    Wage statement claim……………………………………………………     11

                   c.    Waiting-time and PAGA penalties…………………………………………     12

                   d.    Total exposure……………………………………………………………     13

             3.    The Settlement provides for an equitable method of allocating relief to
                   Class Members………………………………………………………………     13

4.   The Court should preliminarily approve the negotiated Attorneys' Fees and Costs…………………………………………………………………… 14

D.   There are no obvious deficiencies with the Settlement or preferential treatment to certain Class Members……………………………………… 15

E.   The Court should preliminarily approve the negotiated Class Representative Service Award………………………………………………………….. 15

F.   The proposed Class Notice adequately informs Class Members about the case and proposed Settlement……………………………….….……… 16

G.   Proposed PAGA settlement is reasonable…………………………………… 17

H.   CAFA…………………………………………………………………...…… 18

I.   The proposed Settlement Class satisfies Rule 23 and should be certified..… 18

1.   Numerosity……………………………..….…………..…………… 18

2.   Ascertainability………………………………………………….… 19

3.   Typicality…………………………………………………………… 19

4.   Commonality……………………………………………………….. 19

5.   Adequacy…………………………………………………………… 20

6.   Common questions of law and fact predominate…………….……… 20

7.   Superiority of Class Action……………………………………….... 21

IV.   CONCLUSION…………………………………………………………….… 21

1

## TABLE OF AUTHORITIES

2

<u>FEDERAL CASES</u>

3

*Balderas v. Massage Envy Franchising, LLP*
4      2014 WL 3610945. (N.D. Cal. July 21, 2014)……………………………………...     13

5

*Churchill Village, LLC v. Gen. Elec.*
6      361 F.3d 566 (9th Cir. 2004)…………………………………………………     6

7

*D'Amato v. Deutsche Bank*
     236 F.3d 78 (2d Cir. 2001)…………………………………………………..     7
8

*Eisen v. Carlisle & Jacqueline*
9      417 U.S. 156 (1974)…………………………………………………………..     16

10

*Franklin v. Kaypro*
11      884 F.2d 1222 (9th Cir. 1989)………………………………………………     7

12

*Hanlon v. Chrysler Corp.*
13      150 F.3d 1011 (9th Cir. 1998)………………………………………………     6, 19, 21

14

*In re Apple Computer, Inc. Derivative Litig.*
     2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008)…………………..     7
15

16

*In Re Armored Car Antitrust Litig.*
     472 F. Supp. 1357 (N.D. Ga. 1979)…………………………………………..     13
17

*In Re Four Seasons Secs. Laws Litig.*
18      58 F.R.D. 19 (W.D. Okla.1972)……………………………………………..     13

19

*In re Global Crossing Sec. and ERISA Litig.*
20      225 F.R.D. 436 (S.D.N.Y 2004)……………………………………………...     9

21

*In re IKON Office Solutions, Inc. Sec. Litig.*
     194 F.R.D. 166 (E.D. Pa. 2000)……………………………………………..     9
22

23

*In re Nat'l Football League Players' Concussion Injury Litig.*
     961 F. Supp. 2d 708 (E.D. Pa. 2014)………………………………………….     8
24

*In re Tableware Antitrust Litig.*
25      484. F. Supp. 2d 1078 (N.D. Cal. 2007)……………………………………….     8

26

*In re Warfarin Sodium Antitrust Litig.*
27      212 F.R.D. 231 (D. Del. 2002)………………………………………………     13

28

*Linney v. Cellular Alaska P'ship*
    151 F.3d 1234 (9th Cir. 1998)…………………………………………………..    9

*Loud v. Eden Med. Ctr.*
    2013 U.S. Dist. LEXIS 122873 (N.D. Cal. Aug. 28, 2013)…………………..    11

*Mangold v. Calif. Public Utilities Comm'n*
    67 F.3d 1470 (9th Cir. 1995)…………………………………………………..    14

*McAtee v. Capital One, F.S.B.*
    479 F.3d 1143 (9th Cir. 2007)…………………………………………………..    14

*Montoya v. Intelicare Direct, Inc.*
    2016 WL 4142342 ((S.D. Cal. Aug. 4, 2016)………………………………..    8

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004)……………………………...…..…………..    9

*Newman v. Stein*
    464 F. 2d 689 (2d Cir. 1972)…………………………………………………..    9

*Officers for Justice v. Civil Serv. Comm'n*
    688 F.2d 615 (9th Cir. 1982)…………………………………………………..    9

*Rodriguez v. West Pub. Corp.*
    463 F.3d 948 (9th Cir. 2009)…………………………………………………..    9, 16

*Ruch v. AM Retail Group, Inc.*
    2016 WL 1161453 (N.D. Cal. Mar. 24, 2016)………………………………..    8

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir. 2002)…………………………………………………    14

**STATE CASES**

*Chavez v. Netflix, Inc.*
    162 Cal. App. 4th 43 (2008)…………………………………………………..    14

*Laffitte v. Robert Half Int'l*
    1 Cal. 5th 480 (2016)…………………………………………………………..    14

*Lealao v. Beneficial Cal. Inc.*
    82 Cal. App. 4th 19 (2000)…………………………………………………..    14

*Serrano v. Priest*
    20 Cal. 3d 25 (1977)…………………………………………………………    14

**FEDERAL STATUES**

Fed. R. Civ. P. 23……………………………………………………………    6, 16-21

**STATE STATUES**

Cal. Labor Code § 203……………………………………………………    12

Cal. Labor Code § 226……………………………………………………    11

Cal. Labor Code § 2699…………………………………………………..    12

**OTHER**

Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002)..............................    8

Manual for Complex Litigation (4th ed. 2004)…………………………    6, 17

Tashima & Wagstaffe, Rutter Group Practice Guide: Federal Civil Procedure Before Trial, California & 9th Cir. Editions (The Rutter Group, 2015)………………………………………………………    14

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, J. of Empirical Legal Studies, Vol. 1 (March 2004)....................................................................................................    15

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Parties seek preliminary approval of a $800,000 class action settlement for 250 class members.  Below are key terms of Stipulation and Settlement Agreement of Class Action Claims[1]:

(1)     Class Members: all non-exempt employees who worked as Pipeline Operators and/or Pipeline Controllers in Defendants' California locations from May 2, 2014 to Preliminary Approval

(2)     Total Settlement Amount of $800,000 that includes:

    (a)     Net Settlement Fund (i.e., Total Settlement Amount minus Fees and Cost Award, Claims Administration Costs, PAGA Payment, and the Service Award) allocated to Settlement Class

        (i)     <u>One hundred percent</u> of the Net Settlement Fund will be paid to Class Members, and not retained by Defendants

    (b)     Distribution of the Net Settlement Fund based on the percentage of weeks worked by each individual Class Member compared to weeks worked by all Class Members

    (c)     $240,000 Attorneys' Fees and incurred costs to Class Counsel

    (d)     $10,000 Claims Administration Costs to Claims Administrator

    (e)     $10,000 PAGA Payment pursuant to Private Attorneys General Act

    (f)     $10,000 Service Award to Plaintiff Steven M. Bailey for his efforts and general release of claims against Defendants

As detailed below, the Settlement satisfies all criteria for preliminary approval under federal law and falls within the range of reasonableness.  Accordingly Parties respectfully request that this Court grant preliminary approval of the Settlement Agreement.

---

[1]     "Settlement Agreement" or "Settlement."  Unless indicated otherwise, capitalized terms used here have the same meaning as those defined by the Settlement Agreement.

## II.    FACTS AND PROCEDURE

### A.    Overview of Case

Defendants are a large energy infrastructure company in North America.  They own and operate approximately 84,000 miles of pipelines and 180 terminals.  Their pipelines transport natural gas, refined petroleum products, crude oil, carbon dioxide and more.  They also store a variety of products at their terminals such as gasoline, jet fuel, ethanol, coal, petroleum coke and steel.  Each terminal operates continuously, 24 hours a day, seven days a week.

Defendants employed Plaintiff Steven Bailey as a Pipeline Operator and/or Pipeline Controller, a non-exempt and/or hourly position, at their Rocklin, California facility from March 1982 to July 7, 2017. (*See* Declaration of Sang J Park [Park Decl. ¶___] ¶¶ 4-5)

#### 1.    Plaintiff's theory of case

On May 2, 2018 Plaintiff brought the instant wage and hour Class action primarily challenging two of Defendants' company-wide practices that stem from their alleged unlawful uniform policies: failure to provide duty-free uninterrupted Labor Code-compliant rest breaks, and failure to provide duty-free uninterrupted Labor Code-compliant meal periods.

All remaining claims—i.e., unpaid minimum wage, wages not paid on termination, non-compliant wage statements, PAGA penalties and Cal. B&P 17200 (Unfair Business Practices)—were derived from Defendants' meal and rest period policy and practices. (Park Decl. ¶¶ 6-7)

Plaintiff posited the following facts in support of his claims.

Defendants required Plaintiff and class members to work 12-hour shifts—from 6 pm to 6 am or 6 am to 6 pm.  Defendants required Plaintiff and class members to work their shifts alone and to stay at their station at all time during their 12-hour shifts.

For example, Plaintiff operated up to 5 pipelines alone during his 12-hour shifts.  He operated the valves and pumps of each pipeline to ensure that the correct petroleum product would be pumped out to the correct pipeline at the correct time.

Throughout their shifts, Defendants required Plaintiff and the other Operators to monitor the transport process, respond to upsets and critical events, and maintain the safe and stable operation of their units.

1   In order to do so, Defendants required Plaintiff and other Operators to remain attentive,
2   carry radios, and be reachable at all times during their shifts.  Defendants also required Plaintiff
3   and other Operators to remain in contact with supervisors and other employees working in their
4   unit throughout their shifts.

5   Consequently Plaintiff and class members never received off-duty breaks because they
6   were constantly and continuously responsible for their units. (Park Decl. ¶ 8)

7   Defendants obviously dispute Plaintiff's claims.  Defendants posited, among others, that
8   Plaintiff worked lawful on-duty meal periods, and they regardless paid Plaintiff meal period
9   premiums.  And Defendants provided all duty-free rest breaks to Plaintiff. (Park Decl. ¶ 9)

10  **B.      Plaintiff's Counsel thoroughly investigated the factual and legal issues and**
11  **were thus able to objectively assess the Settlement's reasonableness**

12  Plaintiff's Counsel thoroughly investigated and researched Class claims and their
13  theories of liability, their defenses, and the developing body of law before the Settlement.  The
14  comprehensive investigation included the exchange of informal and formal discovery and
15  statistical information with Defendants; multiple fact-finding sessions with Plaintiff; and,
16  several conferences with Defense counsel. (Park Decl. ¶ 10)

17  Plaintiff received, among others, the following information, data and documents relevant
18  to Class-wide liability ("Class Data") in support of his investigation and evaluation of Class
19  claims:  (1) employee time and payroll records; (2) total number of former and current
20  employees in the Class Period; (3) total number of workweeks; (4) total number of shifts and
21  pay periods; (5) average rate of pay; (6) employee handbooks, procedure manuals, and
22  operations manuals addressing Defendants' wage and hour practices, e.g., (i) timekeeping and
23  payroll policies, (ii) meal and rest periods, (iii) wage statements; and (8) employee schedules.
24  (Park Decl. ¶ 11)

25  Plaintiff's Counsel then applied the Class Data to Class members to determine when
26  meal breaks were missing, late or short, and to determine the number of rest breaks that were
27  owed to them. (Park Decl. ¶ 12)

28  Needless to say Plaintiff's Counsel made an informed decision about the strengths and

weaknesses of Plaintiff's theories of liability, Defendant's affirmative defenses, Class-wide damages, and benefits of Settlement based on the receipt, analysis, and application of the Class Data. (Park Decl. ¶ 13)

Further, and continuing their due diligence, Plaintiff's Counsel (1) determined Plaintiff's suitability as a Class representative, through interviews, background investigations, and analyses of his employment files and related records; (2) researched wage-and-hour class actions involving similar claims; (3) engaged in the discovery process; (4) obtained and analyzed Defendants' wage-and-hour policies and procedures; (5) obtained and analyzed time and corresponding payroll records to determine violation rates and penalty payments; (6) researched the latest case law bearing on the theories of liability; (7) researched settlements in similar cases; (8) analyzed the value of Plaintiff's claims; (9) drafted a mediation brief; (10) negotiated the terms of the Settlement; (11) finalized the Settlement and Release; (12) finalized the Notice of Class Action Settlement; and (13) drafted preliminary approval papers. (Park Decl. ¶ 14)

**C.      Parties settled after mediation**

The Parties agreed to private mediation to attempt to resolve the Class claims.  On July 23, 2019 the Parties attended an all-day mediation with Howard Hay, Esq.—a well-regarded mediator with experience in resolving wage and hour class actions.  The Parties reached the Class Settlement at the mediation.  At all times the Parties' negotiations were adversarial and non-collusive. (Park Decl. ¶ 15)

**D.      Proposed settlement fully resolves Plaintiff's claims**

**1.      Composition of the Settlement Class**

The proposed Settlement Class Members consist of all of Defendants' current and/or former non-exempt employees who worked for Defendants as Pipeline Operators and/or Pipeline Controllers in the state of California between May 2, 2014 and the Preliminary Approval Date at the following California facilities of Defendants:  Barstow, Bradshaw (Sacramento), Brisbane, Carson, Chico, Colton, Concord, Fresno, Imperial, Industry, Los Angeles, Mission Valley (San Diego), Orange, Richmond, Rocklin, San Jose, Stockton and Watson (Long Beach).

And the Settlement Class is broken into two subclasses: "Operator 12 Subclass"—all members of the Class who were classified as "Operator 12s" because they regularly worked rotating 12-hour shifts; and, "Remaining Class Members"—all members of the Class who were not classified as Operator 12s. [Settlement Agreement § I.F]

### 2.    Settlement consideration

Plaintiff and Defendants have agreed to fully resolve the Class claims for $800,000.

The Total Settlement Amount includes: (1) settlement payments to Settlement Class Members ("Net Settlement Fund"); (2) attorneys' fees of $240,000 and actual litigation costs; (3) Claims Administration Costs of $10,000; (4) PAGA Payment of $10,000; and (5) Service Award of $10,000 to Plaintiff Steven Bailey. (Settlement Agreement § I.A-JJ)

The distribution of the Net Settlement Fund to Class Members is straightforward: Each Class Member's share of the settlement will be proportional to the total number of workweeks he or she worked during the Class Period, with ninety-percent (90%) of the Net Settlement Fund allocated to "Operator 12s," and ten-percent (10%) to "Remaining Class Members." (Settlement Agreement § III.D.4)  Defendants' records will determine Class Members' number of workweeks, and Class Members will have an opportunity to challenge those records. [Settlement Agreement § III.D.4.(c).(5); *see* Notice of Class Action Settlement, § 7]

If any Class Members opt out, the Claims Administrator will proportionately increase the individual Settlement payment for each Participating Class Member to ensure that 100% of the Net Settlement Fund is distributed to participating Class Members. (Settlement Agreement §§ I.II., III.F.5.(d))  No portion of the Class Settlement Amount will revert to Defendants. (Settlement Agreement § I.HH)

### 3.    Release by the Settlement Class

Plaintiff and Class Members agreed to the Released Claims in exchange for the Class Settlement. (Settlement Agreement §§ I.CC, III.A.)  The Released Claims cover the period from May 2, 2014 through preliminary approval of this Settlement. (Settlement Agreement § I.F.) Plaintiff also agreed to an additional general release of his individual claims in exchange for his Service Award. (Settlement Agreement § III.A.1.)

1  III.    **ARGUMENT**

2      A.      **Court should preliminarily approve the Class Action Settlement**

3          Class action settlements must be approved by the court and notice of the settlement must

4  be provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A).  To

5  protect absent class members' due process rights, approval of class action settlements involves

6  three steps:

7      1.      Preliminary approval of the proposed settlement

8      2.      Notice to the class providing them an opportunity to exclude themselves, and

9      3.      A final fairness hearing concerning the fairness, adequacy, and reasonableness of

10          the settlement.

11  *See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

12          Fed. R. Civ. P. 23(e) provides that if the proposal would bind class members, the Court

13  may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate

14  after considering whether:

15      (A)      the class representatives and class counsel have adequately represented the class

16      (B)      the proposal was negotiated at arm's length

17      (C)      the relief provided for the class is adequate, taking into account:

18              (i)      the costs, risks, and delay of trial and appeal

19              (ii)      the effectiveness of any proposed method of distributing relief to the

20                  class, including the method of processing class-member claims

21              (iii)      the terms of any proposed award of attorney's fees, including

22                  timing of payment, and

23              (iv)      any agreement required to be identified under Rule 23(e)(3), and

24      (D)      the proposal treats class members equitably relative to each other.

25          The judicial policy favoring settlement of class action suits should guide the Court in

26  evaluating the fairness of a settlement. *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566,

27  576 (9th Cir. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d at 1027 (endorsing the trial

28  court's "proper deference to the private consensual decision of the parties" when approving a

1    settlement).  As this Circuit has observed, "settlements offer parties and their counsel relief from

2    the burdens and uncertainties inherent in trial…The economics of litigation are such that pre-

3    trial settlement may be more advantageous for both sides than expending time and resources

4    inevitably consumed in the trial process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir.1989).

5          **B.**    **Settlement is the product of arms'-length negotiations and is therefore**

6                    **entitled to a presumption of fairness**

7          In evaluating the Settlement for preliminary approval, the Court "first considers 'the

8    means by which the parties arrived at settlement.'" *In re Volkswagen "Clean Diesel" Mktg.,*

9    *Sales Practices, and Prods. Liab. Litig.* ("*Volkswagen*"), 2016 WL 4010049, *14 (N.D. Cal.

10   July 26, 2016).  "Preliminary approval is appropriate if the proposed settlement is the product of

11   serious, informed, non-collusive negotiations." *Id.*

12         Here the Parties participated in mediation with Howard Hay, a respected mediator of

13   wage and hour class actions.  Mr. Hay helped to manage the Parties' expectations and provided

14   a useful, neutral analysis of the issues and risks to both sides.  A mediator's participation weighs

15   considerably against any inference of a collusive settlement. *See In re Apple Computer, Inc.*

16   *Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5,

17   2008); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement

18   in precertification settlement negotiations helps to ensure the proceedings were free of collusion

19   and undue pressure.")  At all times Parties' negotiations were adversarial and non-collusive.

20         The Parties were represented by experienced class action counsel throughout the

21   negotiations resulting in this Settlement.  Plaintiff's counsel are seasoned class action attorneys

22   who regularly litigate wage and hour claims through certification and on the merits, and have

23   considerable experience settling wage and hour class actions. (*See* Park Decl. ¶¶ 38-47)

24   Defendants are represented by Fisher & Phillips LLP, which operates a respected wage and hour

25   defense practice.

26         As this Settlement is the "result of arms'-length negotiations by experienced class

27   counsel, [it is] entitled to 'an initial presumption of fairness.'" *Volkswage*n, 2016 WL4010049,

28   at *14 (internal citation omitted).

**C.      The relief provided by the Settlement is fair and reasonable**

At the preliminary approval stage, the Court evaluates whether the settlement is within the "range of reasonableness," and whether notice to the class and the scheduling of a final approval hearing should be ordered. *See generally* 3 Conte & Newberg, *Newberg on Class Actions*, § 7.20 (4th ed. 2002).  For preliminary approval, scrutiny of the settlement is reduced. *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) ("At the preliminary approval stage, the bar to meet the 'fair, reasonable and adequate' standard is lowered."); *see also, Montoya v. Intelicare Direct, Inc.*, No. 15CV1269-LAB, 2016 WL 4142342 (S.D. Cal. Aug. 4, 2016).

The Court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible judicial approval" and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate. Newberg, § 11:25. Preliminary approval should be granted if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval. *Ruch v. AM Retail Group, Inc*., 2016 WL 1161453, at *7 (N.D. Cal. Mar. 24, 2016) (quoting *In re Tableware Antitrust Litig.*, 484. F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

**1.      The Class Settlement Amount is within the range of reasonableness**

As discussed in detail below, an objective evaluation of the Settlement confirms that the relief negotiated on the Class' behalf—a $800,000 non-reversionary total Class Settlement Amount—is fair, reasonable, and valuable.  The Settlement was negotiated by the Parties at arm's length with helpful guidance from Howard Hay, Esq., and the Settlement confers substantial benefits to Class Members.  The relief offered by the Settlement is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases.

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider the strength of the plaintiff's case and the amount offered in

1  settlement, among other factors. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.

2  1998).  Ultimately, "the district court's determination is nothing more than an amalgam of

3  delicate balancing, gross approximations, and rough justice," and there is no single "formula" to

4  be applied; rather, the Court may presume that the parties' counsel and the mediator arrived at a

5  reasonable range of settlement by considering Plaintiff's likelihood of recovery. *Officers for*

6  *Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Rodriguez v. West Pub. Corp.*,

7  563 F.3d 948, 965 (9th Cir. 2009).

8       Federal district courts recognize that there is an inherent "range of reasonableness" in

9  determining whether to approve a settlement "which recognizes the uncertainties of law and fact

10  in any particular case and the concomitant risks and costs necessarily inherent in taking any

11  litigation to completion." Newman v. Stein, 464 F. 2d 689, 693 (2d Cir. 1972); *see also Nat'l*

12  *Rural Telecomm. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled

13  law that a proposed settlement may be acceptable even though it amounts to only a fraction of

14  the potential recovery").[2]

15           **2.    Plaintiff's Counsel realistically assessed the settlement value of claims**

16       As detailed below, Plaintiff's valuation involved the aggregate value of claims and

17  discounting for risks of continued litigation (Park Decl. ¶ 16)

18                   **a.    Meal period and rest break claims**

19       As detailed above, Plaintiff alleged that Defendants enforced a scheduling policy and

20  practice that made it difficult for Class Members to take uninterrupted duty-free meal periods

21  and rest breaks.  Plaintiff calculated Defendants' maximum exposure for the meal periods and

22  rest breaks of $2,812,830, respectively, by taking the product of the total number of shifts

23  during the Class Period (approximately 91,385) and estimated average hourly rate of pay

24  _____

25       [2] See also *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y.
   2004) ("settlement amount's ratio to the maximum potential recovery need not be the sole, or
26  even dominant, consideration when assessing settlement's fairness"); *In re IKON Office*
   *Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) ("the fact that a proposed
27  settlement constitutes a relatively small percentage of the most optimistic estimate does not, in
   itself, weigh against the settlement; rather the percentage should be considered in light of
28  strength of the claims").

($30.78).

Defendant's maximum theoretical exposure had to be offset by the strength of its defenses (e.g., on-duty meal period agreements, payment of meal period premiums, no widespread meal period and rest break violations, and Defendants authorized and permitted meal periods and rest breaks), and the likelihood of certifying the Class, winning on liability, and prevailing on appeal.

Plaintiff provided a deeper discount for the rest break claim because employers do not have an obligation to record rest periods (rest periods are paid breaks). The relative lack of written proof—except for anecdotal Class Member testimony—would have reduced the likelihood of certifying the claim.

Plaintiff especially recognized the risks of Class certification presented by the following recent decisions: See, e.g., *Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333, 1341 (2009) (denying certification because employees' declarations attesting to having taken meal periods and rest breaks demonstrated that individualized inquiries were required to show harm); *Campbell v. Best Buy Stores, L.P.*, 2013 U.S. Dist. LEXIS 137792, at *30-41 (C.D. Cal. Sept. 20, 2013) (following *Brinker* and denying certification of proposed meal period and rest break class due to lack of uniform policy); *Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18, 2012) (denying motion to certify meal period and rest break class based on employer's practice of understaffing and overworking employees); *Gonzalez v. Officemax N. Am.*, 2012 U.S. Dist. LEXIS 163853 (C.D. Cal. Nov. 5, 2012) (same); *Brown v. Fed. Express Corp.,* 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying certification of driver meal period and rest break claims based on the predominance of individual issues); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008) (denying certification on meal periods claim); *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453, 467-68 (S.D. Cal. 2007) (declining to certify class action because individual issues predominated when different employee stations provided different practices with respect to meal periods).

Realistically, and considering the real risks of continued litigation, Plaintiffs valued the meal period and rest break claims for settlement purposes between $35,160 and $70,320, and

1   $175,801 and $351,603, respectively. (Park Decl. ¶¶ 17-21)

2                                b.    **Wage statement claim**

3           Plaintiff alleged that Defendants failed to properly itemize Class Members' wage

4   statements in violation of Labor Code § 226(a).  Penalties for violations of section 226(a) are

5   assessed at the rate of $50 for the initial pay period in which a violation occurs and $100 per

6   employee for each violation in a subsequent pay period, not to exceed an aggregate of $4000

7   dollars per employee. [Cal. Lab. Code § 226(e)]

8           Plaintiff calculated Defendants' maximum exposure for the wage statement claim of

9   $395,650 by taking the product of the approximate total statutory pay periods worked by Class

10  Members (approximately 3968) and the statutory penalty.

11          Plaintiff then offset Defendants' maximum exposure by the strength of its affirmative

12  defenses and the risks of continued litigation.

13          Defendants commonly argue that Class Members are not harmed by non-compliant wage

14  statements, and Courts should not penalize employers for purported unintentional errors on

15  wage statements.  Before Section 226(e) was amended, the dispositive issue was whether

16  "suffering injury" was satisfied by the deprivation of a legal right or by consequential damages

17  caused by the non-compliant wage statements.  Employers had frequently prevailed in arguing

18  for the latter interpretation.  Even after the enactment of section 226(e), some courts have held

19  that this amendment merely clarified existing law and held that Plaintiffs must demonstrate

20  actual injury. See *Loud v. Eden Med. Ctr.*, 2013 U.S. Dist. LEXIS 122873, **36-53 (N.D. Cal.

21  Aug. 28, 2013) (granting summary judgment on wage statement claim because plaintiff could

22  not show injury due to defects and that incorrect wage information is not willful)  Even if wage

23  statement claims survive summary judgment, the strength of the claim is inextricably tied to the

24  strength of the underlying predicate claims (i.e., liability for any wage statement claim is

25  completely derivative).

26          Hence, and considering the risks of continued litigation, Plaintiff valued the wage

27  statement claim for settlement purposes between $49,456 and $98,912. (Park Decl. ¶¶ 22-26)

28

1

2          c.    **Waiting-time and PAGA penalties**

3          Plaintiff alleged waiting-time[3] and PAGA penalties[4] for Defendants' purported

4   violations of underlying Labor code violations.  Plaintiff estimated Defendants' maximum

5   potential recovery on waiting-time and PAGA penalties at $428,458 and $791,300, respectively.

6   Although the formulae for calculating maximum penalties under Labor Code §§ 203 and

7   2699(f)(2) are fairly straightforward, analysis becomes more difficult for settlement purposes

8   because waiting time and PAGA claims are only as strong as the underlying predicate claims.

9          First Defendants could have argued that waiting-time penalties are applicable only when

10  the failure to pay wages at termination is "willful." (*See* Lab. Code § 203; Cal. Code Regs., tit.

11  8, § 13520)[5]  Second PAGA penalties are discretionary, i.e., a judge may order a defendant to

12  pay all penalties, or none at all—even if the plaintiff proves liability.[6]

13         Hence, and considering the risks of continued litigation, Plaintiff valued all penalty

14  claims at between $276,110 and $552,220. (Park Decl. ¶¶ 27-29)

---

[3]     Under California law, if an employer discharges an employee, all wages earned and unpaid at the time of discharges are due and payable immediately to the employee.  Failure to pay an employee all wages and premium pay owed, including overtime premiums, reporting time pay, meal period/rest period premiums, and split shift premium pay, may entitle an employee to waiting time penalties.  These penalties continue for up to 30 calendar days. Waiting time penalties are computed by multiplying the employee's daily wage rate by the specified number of days since the payment of the wages became due, not to exceed 30 calendar days. *See* Lab. Code § 203.

[4]     Under PAGA, the civil penalty for violations of any of the code provisions enumerated by Lab. Code § 2699.5 is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation. *See* Lab. Code § 2699(f)(2).

[5]     Defendants would also have argued a good faith dispute as to whether wages are due precludes the imposition of waiting time penalties. Cal. Code Regs., tit. 8, § 13520.

[6]     "For purposes of this part, whenever the Labor and Workforce Development Agency, or any of its departments, divisions, commissions, boards, agencies, or employees, has discretion to assess a civil penalty, a court is authorized to exercise the same discretion, subject to the same limitations and conditions, to assess a civil penalty." Lab. Code § 2699(e)(1). Courts have not hesitated in exercising this discretionary authority. See, e.g., *Fleming v. Covidien, Inc*., No. ED CV10-01487, 2011 U.S. Dist. LEXIS 154590, at *8–9 (C.D. Cal. Aug. 12, 2011) (slashing PAGA penalties for wage statement violations by over 500%, from $2.8 million to $500,000).

---

1

### d.    Total exposure

2    In aggregate, and as detailed above, Plaintiff estimated Defendants' maximum potential

3    exposure for the claims at issue at approximately $7.2 million.

4    Taking into account the discount factors, and the risks of continued litigation, Plaintiff

5    determined that a settlement of approximately 12% of Defendants' maximum potential exposure

6    for the class claims was fair and reasonable. (Park Decl. ¶ 30)  *See, e.g., In re Warfarin Sodium*

7    *Antitrust Litig.,* 212 F.R.D. 231, 256-58 (D. Del. 2002) (recognizing that a reasonable settlement

8    amount can be 1.6% to 14% of the total estimated damages); *In Re Armored Car Antitrust Litig.,*

9    472 F. Supp. 1357, 1373 (N.D. Ga. 1979) (settlements with a value of 1% to 8% of the

10   estimated total damages were approved); *In Re Four Seasons Secs. Laws Litig.,* 58 F.R.D. 19,

11   37 (W.D. Okla.1972) (approving 8% of damages); *Balderas v. Massage Envy Franchising, LLP,*

12   2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (finding settlement which amounted to 8%

13   of maximum recovery "[fell] within range of possible initial approval on the strength of

14   plaintiff's case and the risk and expense of continued litigation."); *In re Omnivision Techs., Inc.,*

15   559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement of 6% to 8% of estimated

16   damages).

17

### 3.    The Settlement provides for an equitable method of allocating relief
### to Class Members

18

19   The Settlement provides for an equitable method of allocating relief to Class Members.

20   The distribution of the Net Settlement Fund to Class Members is straightforward: Each Class

21   Member's share of the settlement will be proportional to the total number of workweeks he or

22   she worked during the Class Period, with ninety-percent (90%) of the Net Settlement Fund

23   allocated to "Operator 12s," and ten-percent (10%) to "Remaining Class Members." (Settlement

24   Agreement § III.D.4)  Defendants' records will determine Class Members' number of

25   workweeks, and Class Members will have an opportunity to challenge those records.

26   [Settlement Agreement § III.D.4.(c).(5); *see* Notice of Class Action Settlement, § 7]

27   If any Class Members opt out, the Claims Administrator will proportionately increase

28   the individual Settlement payment for each Participating Class Member to ensure that 100% of

1   the Net Settlement Fund is distributed to participating Class Members. (Settlement Agreement

2   §§ I.II., III.F.5.(d))  No portion of the Class Settlement Amount will revert to Defendants.

3   (Settlement Agreement § I.HH)

4           **4.      The Court should preliminarily approve the negotiated Attorneys'**

5                     **Fees and Costs**

6           At final approval, Class Counsel will request attorneys' fees in the amount of 30% of the

7   total common fund.  Under controlling California law,[7] the common fund method for awarding

8   attorneys' fees is appropriate where, as here, attorneys have been instrumental in creating a

9   settlement fund that benefits all class members. See *Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977)

10  (noting that federal and state courts have long recognized that when attorneys create a common

11  fund that benefits a class, the attorneys have an equitable right to be compensated from that

12  fund); *Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19, 48 (2000) ("Courts agree that,

13  because the percentage-of-the-benefit approach is 'results oriented rather than process-oriented,

14  it better approximates the workings of the marketplace' than the lodestar approach." [citation

15  omitted]).  Although California has no benchmark, California courts routinely award attorneys'

16  fees equalling approximately one-third of the common fund's total potential value or higher.

17  See, e.g., *Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480 (2016) (affirming a fee award representing

18  one-third of the common fund); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008)

19  ("[S]tudies show that…fee awards in class actions average around one-third of the recovery.");

20

21          [7]      In diversity actions, federal courts look to state law in determining whether a
22  party has a right to attorneys' fees and how to calculate those fees. *Mangold v. Calif. Public*
    *Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Ninth Circuit precedent has applied
23  state law in determining not only the right to fees, but also in the method of calculating the
    fees").  The state law governing the underlying claims in a diversity action "also governs the
24  award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Because
    CAFA operates to modify the diversity requirement, "the Erie doctrine still applies so that state
25  substantive law governs such claims in federal court." See Tashima & Wagstaffe, Rutter Group
    Practice Guide: Federal Civil Procedure Before Trial, California & 9th Cir. Editions (The Rutter
26  Group, 2015) paragraph 10:497.5.  As the Ninth Circuit observed, "even after CAFA's
    enactment, Erie-related doctrines ensure that, for the most part, removal of a CAFA case from
27  state to federal court produces a change of courtrooms and procedure rather than a change of
28  substantive law." *McAtee v. Capital One, F.S.B.*, 479 F.3d 1143, 1147 (9th Cir. 2007).

1  Eisenberg & Miller, Attorney Fees in Class Action Settlements: An Empirical Study, J. of

2  Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35 (independent studies of class

3  action litigation nationwide have come to a similar conclusion that a one-third fee is consistent

4  with market rates).

5          Plaintiff will file a formal motion for the negotiated attorneys' fees and costs once

6  preliminary approval of the Settlement is granted.

7          **D.    There are no obvious deficiencies with the Settlement or preferential**

8                  **treatment to certain Class Members**

9          The Court must also ask whether "the Settlement contains any obvious deficiencies" and

10  "whether the Settlement provides preferential treatment to any Class Member." *Volkswagen*,

11  2016 WL 4010049, at **14, 16.  This Settlement contains no "glaring deficiencies" *Id*. at *14.

12  The Settlement does not provide for a reversion of unpaid settlement funds to Defendants or

13  distribute a disproportionate share of the settlement to the attorneys that requires closer scrutiny

14  in the Ninth Circuit. *See id*. at *14-15 (applying the factors set forth in *In re Bluetooth Headset*

15  *Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).

16          Moreover no segment of the Class is given preferential treatment.  Plaintiff will also

17  seek, at a later time (when the Motion for Attorneys' Fees is filed), an incentive award in an

18  amount that is well within the range of such awards in the Ninth Circuit for their work on the

19  behalf of the Class, the reputation risk undertaken, and for the execution of a general release.

20  *See infra*, § III.G. *See, e.g., La Fleur v. Medical Management Intern, Inc.*, No. 13-00398-VAP,

21  2014 WL 2967475, *8 (C.D. Cal. June 25, 2014) (awarding $15,000 to each named plaintiff for

22  services to the Class, reputational harm and general release).  Accordingly the Settlement is

23  procedurally fair, adequate and reasonable.

24          **E.    The Court should preliminarily approve the negotiated Class Representative**

25                  **Service Award**

26          The Settlement provides for a Class Representative Service Award of $10,000 to Steven

27  Bailey for his service on behalf of Class Members and for agreeing to a broader release than

28  those required of other Class Members.  "Incentive awards are fairly typical in class action cases

1   . . . Such awards are discretionary and are intended to compensate class representatives for work

2   done on behalf of the class . . . ." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir.

3   2009) (citing 4 *William B. Rubenstein et al., Newberg on Class Actions* § 11:38 (4th ed. 2008)).

4   These payments work both as an inducement to participate in the suit and as compensation for

5   time spent in litigation activities. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463

6   (describing the service award as an incentive to the class representatives); *Matter of Continental*

7   *Illinois Securities Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) (stating that an enhancement award

8   should be in such an amount "as may be necessary to induce [the class representative] to

9   participate in the suit").

10       Plaintiff will file a formal motion for the negotiated Class Representative Service Award

11   once preliminary approval of the Settlement is granted.

12       **F.**    **The proposed Class Notice adequately informs Class Members about the**

13               **case and proposed Settlement**

14       The proposed class settlement notice and claims administration procedure satisfy due

15   process.  Rule 23(c)(2) of the Federal Rules of Civil Procedure requires the Court to direct the

16   litigants to provide Class Members with the "best notice practicable" under the circumstances,

17   including "individual notice to all members who can be identified through reasonable effort."

18   *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974).  Under Rule 23(c)(2), notice by mail

19   provides such "individual notice to all members." *Id*.  Where the names and addresses of Class

20   Members are easily ascertainable, individual notice through the mail constitutes the "best notice

21   practicable." *Id*. at 175.

22       The Notice of Class Action Settlement ("Class Notice") was jointly drafted and

23   approved by the Parties and provides Settlement Class Members with all required information

24   so that each member may make an informed decision regarding his or her participation in the

25   Settlement.  The Class Notice provides information regarding the nature of the lawsuit; a

26   summary of the substance of the settlement terms; the class definition; the deadlines by which

27   Class Members must submit Request for Exclusions or objections; the date for the final

28   approval hearing; the formula used to calculate settlement payments; a statement that the Court

has preliminarily approved the settlement; a statement that Class Members will release the settled claims unless they opt out.  Accordingly the Notice satisfies the requirements of Rule 23(c)(2). (Park Decl. ¶ 31)

The Class Notice summarizes the proceedings and the terms and conditions of the Settlement in an informative and coherent manner, complying with the statement in Manual for Complex Litigation, supra, that "the notice should be accurate, objective, and understandable to Class Members . . . ." *Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) ("Manual") § 30.211.  The Notice Packet states that the Settlement does not constitute an admission of liability by Defendants, and that Final Approval has yet to be made.  The Notice Packet thus complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. Rule 23(c)(2) and (e); *Manual* §§ 8.21, 8.39; 30.211, 30.212.

The Settlement Administrator will mail the Class Notice to all Settlement Class Members via first class United States mail. (Settlement Agreement § III.F.4.)  In the event Notice Packets are returned as undeliverable, the Settlement Administrator will attempt to locate a current address using, among other resources, a computer/SSN and "skip trace" search to obtain an updated address. (*Id*. at § III.F.4.(b).)  This method was negotiated by the Parties to maximize the Class Member notification rate while ensuring cost effective administration of the Settlement.

**G.    Proposed PAGA settlement is reasonable**

Ten thousand dollars ($10,000) from the Total Settlement Amount are allocated to the resolution of Plaintiff's PAGA claims—75% of which will be paid directly to the LWDA. [Settlement Agreement § I.Y.]  The agreement was reached after good-faith negotiation between the Parties. (Park Decl. ¶ 32)  Where PAGA penalties are negotiated in good faith and "there is no indication that [the] amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009); see, e.g., *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not abuse

1    discretion in approving a settlement which does not allocate any damages to the PAGA….")

2            As for the legislative intent of PAGA, the allocation for PAGA penalties is sufficient to

3    satisfy the dual purpose of deterrence and punishment, given that Defendant will also be

4    required to pay such a large amount in unpaid wages through the class settlement.  A larger

5    allocation could rise to the level of an "unjust, arbitrary, and oppressive, or confiscatory"

6    amount, given that it would provide double punishment in light of the class settlement payments

7    already being awarded to Class Members.  Moreover, this allocation takes into account the fact

8    that the Court has discretion to reduce the PAGA award if Plaintiff prevailed on this claim at

9    trial. *See, e.g., Fleming v. Covidien, Inc*., No. ED CV10-01487, 2011 U.S. Dist. LEXIS 154590,

10   at *8–9 (C.D. Cal. Aug. 12, 2011) (slashing PAGA penalties for wage statement violations by

11   over 500%, from $2.8 million to $500,000).

12           **H.    CAFA**

13           Defendants will comply with the notice requirements of 28 U.S.C. § 1715

14   ("CAFA").

15           **I.    The proposed Settlement Class satisfies Rule 23 and should be certified**

16                   **1.    Numerosity**

17           The numerosity requirement is satisfied if the proposed class is "so numerous that

18   joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Impracticable does not mean

19   impossible, only that it would be difficult or inconvenient to join all members of the class.

20   *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964).  Indeed,

21   courts have found numerosity established by class actions consisting of as little as seven

22   putative class members. *Patrick v. Marshall*, 460 F. Supp. 23, 26 (N.D. Cal. 1978); *Jordan v.

23   L.A. County*, 669 F.2d 1311, 1320 (9th Cir.) (noting, in dicta, that the court "would be inclined

24   to find the numerosity requirement ... satisfied solely on the basis of [39] ascertained class

25   members")

26           Here Settlement Class consists of 250 class members.  Hence the Class is numerous and

27   clearly satisfies the numerosity prong. (Park Decl. ¶ 33)

28

2.       **Ascertainability**

The Class is ascertainable and has already been identified in Defendants' records.

Here, the proposed Settlement Class consists of all non-exempt employees who worked as Pipeline Operators and/or Pipeline Controllers in Defendants' California locations from May 2, 2014 to Preliminary Approval.  Defendants' records show that the Class consists of approximately 250 individuals—making joinder of all Class Members impracticable.  Further the Class is readily ascertainable from Defendants' regular business records because all Class Members are either current or former employees of Defendants. (Park Decl. ¶ 34)

3.       **Typicality**

Typicality under Rule 23(a)(3) is satisfied if the representative plaintiff's claims share a common element with the class: i.e., those claims arise from the same course of conduct that gave rise to the claims of other settlement class members. *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988).

Here Plaintiffs' claims are typical of the proposed Settlement Class because they arise from the same facts and are based on the same legal theories applicable to Class Members. Plaintiffs and Settlement Class Members were injured by the same company-wide practices and seek the same relief. (Park Decl. ¶ 35)

4.       **Commonality**

Commonality relates to whether there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality is satisfied if there is one issue common to class members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Here Plaintiff presents a common claim that all class members were subject to Defendants' uniform pay timekeeping, and meal and rest break policies.

The following questions of law and fact are common to the Class.

- Defendants did not have a written rest break policy and did not allegedly relieve their employees of duty.  So does Defendants' wage and hour policies conflict with the California Labor Code?

- Defendants enforced a company-wide blanket "on-duty" meal break agreement on all Class members. So is Defendants' "on-duty" meal break agreement legal under California Labor Code?

Plaintiff alleged Defendants failed to provide proper meal periods for both Plaintiff and other Class members. California Labor Code § 512(a) states that "an employer may not require, cause or permit an employee to work for a period of more than five (5) hours per day without providing the employee with an uninterrupted meal period of not less than thirty (30) minutes." And Section 512(a) also states "an employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than thirty (30) minutes." Plaintiff planned to prove that late, short, and other missed meal period violations occurred during the relevant time period by using Defendants' time records and uniform policies.

And Plaintiff argued Defendants never properly relieved them for their legally mandated rest breaks.

### 5. Adequacy

Adequacy under Rule 23(a)(4) is satisfied if the named plaintiffs have no disabling conflicts of interest with other members of the class and Class Counsel are competent and well qualified to undertake the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). No conflict exists between Plaintiff and the Class because Plaintiff alleges that he has been damaged by the same alleged conduct as all Class Members and has the incentive to fairly represent all Class Members' claims to achieve the maximum possible recovery. (Park Decl. ¶ 36). Plaintiff has spent considerable efforts in this case, including assisting with investigation. (Park Decl. ¶¶ 37). Plaintiff remains willing to vigorously prosecute this action to the benefit of the class. (Id.)

And Plaintiff is represented by attorneys who have extensive experience in complex wage and hour litigation. (Park Decl. ¶¶ 38-47)

### 6. Common questions of law and fact predominate

Here common questions of law or fact predominate over individual questions pursuant to

Rule 23(b)(3).  As discussed above, the issues of fact and law raised in this action are common to all members of the class and predominate in this case.

### 7.    Superiority of Class Action

The requirement that a class action is superior to other methods of adjudication under Rule 23(b)(3) is also met.  Courts have recognized that the class action device is superior to other available methods for the fair and efficient adjudication of controversies involving large number of employees in wage and hour disputes. *See, e.g., Hanlon*, 150 F.3d at 1022.  Without classwide relief in this action, the Class Members would be forced to litigate numerous cases on a piecemeal basis.

Here, given the size and amount of each individual claim, Class Members likely have little incentive to litigate their claims on an individual basis because the out-of-pocket expense and personal commitment necessary to litigate each claim outweighs any potential recovery.  In sum class treatment is superior to individual case-by-case adjudication.

## IV.    CONCLUSION

As detailed above, the Parties have negotiated a Settlement that is fair, reasonable, and adequate.  Accordingly, the Parties respectfully request that this Court grant preliminary approval of the Settlement Agreement.

Respectfully Submitted,

Dated: April 9, 2020                    MATHEW & GEORGE

*/s/ Sang J Park*

By:_____
      Sang J Park

Attorneys for Plaintiff and Class