1
2
3
4                         UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    STEVEN M. BAILEY,                         Case No.  18-cv-03424-TSH

8                    Plaintiff,

9           v.                                 **ORDER APPROVING CLASS ACTION
                                               SETTLEMENT AND ATTORNEYS'
10   KINDER MORGAN G.P., INC., et al.,         FEES**

11                   Defendants.               Re: Dkt. Nos. 33, 34

12

13        Before the Court are Plaintiff's Motion for Final Approval of Class Action Settlement and

14   Motion for Attorney Fees.  ECF Nos. 33, 34.  The Court finds this matter suitable for disposition

15   without oral argument and **VACATES** the October 1, 2020 hearing.  *See* Civ. L.R. 7-1(b).

16   Having reviewed the Settlement Agreement, the moving papers and the record, the Court

17   **GRANTS** both motions.

18                              **I.      BACKGROUND**

19   **A.      Facts**

20        The Complaint in this action alleges that Defendants (collectively, "KM") are a large

21   energy infrastructure company in North America that owns and operates fossil fuel pipelines and

22   terminals.  *See* Compl. ¶¶ 17-18, ECF No. 1-1.  This includes approximately 84,000 miles of

23   pipelines and about 180 terminals.  *Id.* ¶ 18.  KM employed Plaintiff as a Pipeline Operator or

24   Pipeline Controller, a non-exempt and hourly position, at their Rocklin, California facility from

25   March 1982 to July 7, 2017.  *Id.* ¶ 19.

26        KM required Plaintiff and class members to work 12-hour shifts and required class

27   members to stay at their stations at all times during those shifts.  *Id.* ¶¶ 20-21.  Its company-wide

28   staffing and scheduling policies deprived class members of their lawful meal periods and rest

United States District Court
Northern District of California

United States District Court
Northern District of California

breaks, and class members were not provided one-hour's wages in lieu of missed breaks as is required by California labor law, and as a result KM failed to timely pay class members all wages owed to them and class members' paychecks did not include these wages.  *Id.* ¶¶ 22-29.  KM failed to correctly record class members' meal periods as required by California labor law, *id.* ¶ 30, and it failed to provide class members with complete and accurate wage statements, including failing to identify correctly total hours worked, gross wages, and correct hourly pay rates, *id.* ¶ 31.

Plaintiff asserts claims for unpaid meal period and rest break premiums, failure to pay minimum wages, failure to timely pay final wages, and non-complaint wage statements, all in violation of the California Labor Code, as well as claims under the California Private Attorneys General Act ("PAGA") and the California Business & Professions Code § 17200 *et seq.*

On April 9, 2020, Plaintiff filed a Motion for Preliminary Approval of Class Action Settlement, ECF No. 29, which the Court granted on April 10, 2020, ECF No. 30.  The Court set a hearing on the motion for final approval for October 1, 2020.  Three class members filed objections to the Settlement Agreement ("SA").  ECF No. 31, 32.

**B.     Key Points of the Settlement Agreement**

The settlement class comprises:

> [A]ll of [KM's] current and/or former nonexempt employees who worked for Defendants as Pipeline Operators and/or Pipeline Controllers in the state of California between May 2, 2014 and the Preliminary Approval Date at the following California facilities of Defendants: Barstow, Bradshaw (Sacramento), Brisbane, Carson, Chico, Colton, Concord, Fresno, Imperial, Industry, Los Angeles, Mission Valley (San Diego), Orange, Richmond, Rocklin, San Jose, Stockton and Watson (Long Beach).

SA at 1-2, ECF No. 29-1.  The class is divided into two subclasses:

> The "Operator 12" subclass, which is "all members of the Class who were classified as 'Operator 12s' because they regularly worked rotating 12-hour shifts, anytime between May 2, 2014 and the Preliminary Approval Date;" and

> The "Remaining Class Members" subclass, which is "all members of the Class who were not classified as Operator 12s, anytime between May 2, 2014 and the Preliminary Approval Date."

SA at 2.

United States District Court
Northern District of California

The total settlement amount is $800,000.  *Id.* at 6.  One hundred percent of the settlement fund was claimed by 245 participating class members.  Decl. of Sang J. Park ISO Mot. for Final Approval ("Appr. Decl.") ¶ 30, ECF No. 33-1.  Class counsel ("Counsel") requests $240,000 (30%) of the total settlement amount in fees and $7,586.62 in litigation costs and expenses.  SA at 13; Decl. of Sang J. Park ISO Mot. for Attorney Fees ("Fees Decl.") ¶¶ 45, 50, ECF No. 34-1. The settlement administrator will charge $14,000 in costs.  Decl. of Daniel P. La ("La Decl.") ¶ 1-15, ECF No. 33-4.  The SA contemplates a $10,000 service award for Plaintiff.  SA at 13.

After deductions for fees and costs, 90% of the remaining settlement amount will be allocated to workweeks worked in the Operator 12 subclass, and 10% will be allocated to workweeks in the Remaining Class Member subclass.  SA at 14-15.  Amounts will be paid to class members based on each member's number of workweeks, with each member's share of the settlement amount being proportional to the number of workweeks he or she worked.  *Id.* at 15. Class members' workweeks were determined based on KM's records, and members had opportunity to challenge those records.  SA at 16-17.  Class members will receive an estimated average gross payment of $2,116.33, and an estimated highest gross payment of $5,647.01.

## II.    ANALYSIS

### A.    Final Settlement Approval

A court may grant final approval of a settlement once it determines that the proposed class meets the requirements for certification under Federal Rule of Civil Procedure 23, and that the Settlement reached on behalf of the class is fair, reasonable, and adequate.  "Especially in the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("[S]pecifications of the rule-- those designed to protect absentees by blocking unwarranted or overbroad class definitions-- demand undiluted, even heightened, attention in the settlement context.").  The Court must also find that adequate notice has been given to the Class.

3

United States District Court
Northern District of California

### 1.      Class Certification

The Court previously certified for settlement purposes the settlement class and subclasses in its Order Granting Motion for Preliminary Approval of Class Action Settlement.  ECF No. 30.

### 2.      Notice

Under Federal Rule of Civil Procedure 23(e), "claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Adequate notice is critical to the Court's approval.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).  The Court approved the class notice in its order granting preliminary approval of the SA.  ECF No. 30.  The Parties engaged an administrator to provide notice of the settlement.  La Decl. ¶¶ 1-2.  On May 22, 2020, notice packets were mailed to all 256 eligible class members, and after an error was detected in the original notice, revised packets were sent out on June 10, 2020.  *Id.* ¶¶ 6, 8.  One notice packet was returned.  *Id.* ¶ 9.  This was adequate notice to class members.

### 3.      Whether the Settlement is Fundamentally Fair, Adequate, and Reasonable

A court may only approve a settlement if it finds that it is "fair, reasonable, and adequate." Rule 23(e)(2).  The Ninth Circuit has long instructed district courts to consider and balance multiple factors to assess whether a settlement is "fair, adequate, and free from collusion" under Rule 23(e).  *Hanlon*, 150 F.3d at 1027.  These factors are:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026.  "This list is not exclusive and different factors may predominate in different factual contexts."  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (citation omitted).  Also, recent amendments to Rule 23 established a uniform set of factors courts should consider when determining whether a settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;

4

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "The notes of the Advisory Committee explain that the enumerated, specific factors added to Rule 23(e)(2) are not intended to 'displace' any factors currently used by the courts, but instead aim to focus the court and attorneys on 'the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *6 (July 22, 2019) (quoting Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2)). "Accordingly, the Court applies the framework set forth in Rule 23 with guidance from the Ninth Circuit's precedent, bearing in mind the Advisory Committee's instruction not to let '[t]he sheer number of factors' distract the Court and parties from the 'central concerns' underlying Rule 23(e)(2)"—the fairness, reasonableness, and adequacy of the proposed settlement. *In re Extreme Networks*, 2019 WL 3290770, at *6 (again quoting the advisory notes). "[T]he underlying question remains this: Is the settlement fair?" *Partl v. Volkswagen, AG (In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig)*, 895 F.3d 597, 611 (9th Cir. 2018).

### a.      The Adequacy of Representation

Throughout this litigation, Plaintiff as class representative provided documents to Counsel, regularly conferred with Counsel on the case status and strategies for litigating the claims, assisted in responding to discovery, attended a day-long medication, and reviewed the SA along with Counsel. Decl. of Steven Bailey ¶¶ 3-7, ECF No. 34-3; Appr. Decl. ¶ 32. Counsel's firm represents plaintiffs in a range of employment disputes and has recovered millions of dollars on behalf of clients in wage and hour and consumer class actions in both state and federal court. Fees

Decl. ¶ 35.  Sang J. Park has been practicing law since 2004 and has fifteen years' experience representing primarily plaintiffs in employment and wage and hour class action litigation.  *Id.* ¶¶ 36-37.  He has successfully litigated numerous class actions through certification and settlement and has successfully litigated at both the trial and appellate level.  *See id.* ¶¶ 38-43.  Counsel have determined Plaintiff's suitability as a Class representative through interviews, background investigations, and analyses of his employment files and related records; researched wage-and-hour class actions involving similar claims; engaged in the discovery process; obtained and analyzed Defendants' wage-and-hour policies and procedures; obtained and analyzed time and payroll records to determine violation rates and penalty payments; researched the latest case law bearing on the theories of liability; researched settlements in similar cases; analyzed the value of Plaintiff's claims; drafted a mediation brief; successfully negotiated terms of a settlement; finalized the SA and Release; finalized the Notice of Class Action Settlement; and drafted preliminary approval papers.  Appr. Decl. ¶ 13; *see also* Decl. of Justin Lo ("Lo Decl.") ¶ 7, ECF No. 33-2.  Plaintiff and Counsel have adequately represented the class.

### b.    Arms-Length Negotiations

The second factor under Rule 23(e)(2) requires the Court to consider if the Settlement was negotiated at arm's length.  Plaintiff and KM negotiated assisted by an experienced employment class action mediator, and they reached the settlement at the mediation.  Appr. Decl. ¶ 14.  The involvement of a neutral mediator is positive evidence that settlement negotiations were conducted at arm's length.  *See* Fed. R. Civ. P. 23(e)(2)(B), Advisory Committee Notes ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *G.F. v. Contra Costa Cty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("'[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.'") (quoting *Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)).  Counsel affirms that at all times negotiations were adversarial and non-collusive, Appr. Decl. ¶ 14, and there is no indication they were not.  This is enough to demonstrate the parties engaged in arms-length negotiations.

United States District Court
Northern District of California

#### c.      The Adequacy of the Relief

The SA commits KM to pay $800,000 out of an estimated maximum potential exposure of approximately $7.2 million, or about 12% recovery of estimated maximum potential exposure.  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted).  Although a recovery of 12% is on the lower end, amounts similar to or even less than that amount have been found adequate and fair by courts in this Circuit.  *Avila v. Cold Spring Granite Co.*, 2018 WL 400315, at *6 (E.D. Cal. Jan. 12, 2018) ("Excluding the highly uncertain PAGA penalties, the net settlement amount is roughly 16% of the more realistic maximum recovery amount.  That settlement amount is within the acceptable range, albeit at the low end."); *Jones v. Canon Bus. Sols., Inc.*, 2014 WL 12772083, at *8 (C.D. Cal. Sept. 2, 2014) (settlement amount representing a recovery of between 7 and 58% adequate); *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (settlement of approximately 15% found to be preliminarily fair).

Additionally, continued litigation in this matter would be risky.  Employment class actions "are, by their nature, time-consuming and expensive to litigate."  *Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936, at *3 (E.D. Cal. May 19, 2017) (citing *Hightower v. JPMorgan Chase Bank, N.A.*, 2015 WL 9664959, at *6 (C.D. Cal. Aug. 4, 2015)).  In this action, if litigation continues Plaintiff faces an appreciable risk of class decertification.  *See, e.g.*, *Jimenez v. Allstate Ins. Co.*, 2012 WL 1366052, at *15 (C.D. Cal. Apr. 18, 2012) (denying plaintiff's motion for class certification vis-à-vis meal and rest break claims because the claims would "depend on individualized questions, such as whether a particular adjuster took the legally mandated breaks, and if breaks were missed, why the adjuster failed to take them").  Wage and hour trials are complex and expensive.  Also, if Plaintiffs prevailed at trial, Defendants might appeal.  The settlement amount is an immediate and guaranteed route to payment for class members that, when weighed against the risks and costs of continued litigation, make the relief adequate for purposes of Rule 23.

### d.      Equitable Treatment of Class Members

There were no objections to the settlement on the grounds of equitable treatment of class members.  The SA contemplates payments to class members based on each member's number of workweeks, with each member's share of the settlement amount being proportional to the number of workweeks he or she worked.  This is a reasonable method of distribution for this agreement, where Counsel estimate that nearly 80% of maximum potential exposure resulted from missed meal and rest break periods, and with PAGA liability, partially derivative of the meal and rest break claims, accounting for about another 10%.  *See* Appr. Decl. ¶¶ 16, 29.  Meal and rest break periods bear a natural correlation to the number of hours class members worked.  Additionally, each class member would face a significant difficulty trying to prove with certainty the number of meal and rest breaks missed; distributing based on workweeks is a reasonable way to determine distributions in light of that uncertainty.

### e.      Objections

Three class members objected to the SA.  Two objectors, Mike Bonifacio and Bill Howden, object on the ground that they believe that KM is liable to each employee for meal and rest break claims in the amount of approximately $35,000, and thus the settlement amount is not large enough to be able to pay each employee that amount.  ECF Nos. 31, 32.  But that objection is based on what the objectors approximate is the maximum liability for each employee for those claims.  The settlement is based on a compromise, reached by the Parties after weighing the strength of the class's claims, the risks involved in continued litigation (including the risk of losing and not recovering anything at all), and the likelihood of recovering near that amount if litigation proceeds (for one thing, those estimates assume all class members would be able to prove all missed meal and rest breaks).  The Court has determined that the recovery amount is reasonable and adequate in light of the risks of continued litigation.  Also, the amount the objectors rely on would not be guaranteed even if this case went to trial, and even then, if the class managed to obtain full recovery on the meal and rest break claims, there would be substantial litigation costs which would come out of that recovery, which recovery class members would likely not see for well over a year.  Lastly, the numbers which the objectors arrived at are not

United States District Court
Northern District of California

based on reliable class data (they are based on those members' wage statements alone) which raises substantial doubts about the accuracy of their calculations.

The third objector's objection amounted to, "I do not believe this is a fair compensation for the rest periods missed." Appr. Decl. ¶ 30. For the reasons already discussed, the Court finds the settlement amount is a reasonable and adequate result in light of the risks of continued litigation.

The settlement satisfies the requirements of Rule 23(e) and is fair, reasonable, and adequate. Therefore, the Court approves the Settlement in full.

**B.     Attorneys' Fees**

Counsel, as authorized by the settlement agreement, SA at 13, request approval for payment of 30% from the settlement amount, or $240,000, for attorneys' fees. Fees Decl. ¶ 45. Counsel also request $7,586.62 in costs. *Id.* ¶ 50.

**1.     Legal Standard**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). But in awarding attorneys' fees under Federal Rule of Civil Procedure 23(h), "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 941, (9th Cir. 2011) (citations omitted).

In this Circuit, there are two primary methods used to calculate reasonable attorneys' fees: the lodestar method and the percentage-of-recovery method. *Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 949 (9th Cir. 2015) (citing *In re Bluetooth*, 654 F.3d at 941-42). The lodestar figure represents a reasonable hourly fee multiplied by the number of hours reasonably expended on the litigation. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar figure is a presumptively reasonable fee. *Clark v. City of L.A.*, 803 F.2d 987, 990-91 (9th Cir. 1986). But "[b]ecause the benefit to the class is easily quantified in common-fund settlements" such as this one, courts may alternatively "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942. Applying the percentage-of-recovery calculation method, 25% of the

United States District Court
Northern District of California

fund is a benchmark for a reasonable fee award, and courts should provide adequate explanation of any special circumstances justifying a significant departure. *Id.* (citations omitted). In common fund cases, however, 20-30% is a customary range. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) (The answer to the question of what percentage of a common fund is reasonable depends on the individual circumstances of this case . . . . Ordinarily, however, such fee awards range from 20 percent to 30 percent of the fund created.) (citation omitted))). "The ultimate goal under either method of determining fees is to reasonably compensate counsel for their efforts in creating the common fund." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *5 (N.D. Cal. Feb. 2, 2009).

Factors courts often consider in determining the reasonableness of a percentage-of-recovery award include: (1) the results achieved; (2) the risk of continued litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) the reaction of the class; (6) awards made in similar cases; and (7) comparison with the lodestar. *Ross v. Bar None Enterprises, Inc.*, 2015 WL 1046117, at *8 (E.D. Cal. Mar. 10, 2015) (citing *Vizcaino*, 290 F.3d at 1048-50); *Lusby v. Gamestop Inc.*, 2015 U.S. Dist. LEXIS 42637, *8-9 (citing *Knight*, 2009 WL 248367, at *4). "The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Knight*, 2009 WL 248367, at *5 (citing *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (holding that the "most critical factor is the degree of success obtained"))).

### 2. Analysis

#### a. Results Achieved and Risks of Continued Litigation

Starting with the first two factors, the Court already discussed some of the risks of Plaintiff continuing to litigate this matter, some of them significant, including the risk that Plaintiff would be unable to overcome opposition to class certification. The settlement achieved is a reasonable result when viewed against those risks, and thus Counsel achieved a favorable result for the class.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**b.** **Skill Required and Quality of Work**

Litigating this matter has required a high degree of skill and produced adequate results. "Complex class actions require unique legal skills and abilities." *Zubia v. Shamrock Foods Co.*, 2017 WL 10541431, at *17 (C.D. Cal. Dec. 21, 2017) (quoting *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007) (internal quotation marks omitted)). In this case, Plaintiff's Counsel have significant experience successfully litigating class and collective wage and hours cases. Fees Decl. ¶¶ 36-43; Lo Decl. ¶¶ 2-5. Additionally, as discussed earlier, Counsel has devoted a significant amount of time and attention to this matter.

**c.** **Contingent Nature of the Fee**

"The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1047 (citing *In re: Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299-1300 (9th Cir. 1994)). Counsel have spent 290 hours on this matter, Fees Decl. ¶ 46, Lo Decl. ¶ 9, and operating on a contingency fee basis did not receive payment for time spent or reimbursement for out-of-pocket costs incurred in litigation. "This substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1047.

**d.** **Reaction of the Class**

The reaction of the class has been largely positive. Notice of the settlement was distributed effectively to nearly all class members. Only 11 class members opted out of the settlement and participation was at 95.70%. There were only three objections to the settlement, and none was compelling. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (citations omitted). This factor weighs in favor of fee approval. *See Castillo v. ADT, LLC*, 2017 WL 363108, at *6 (E.D. Cal. Jan. 25, 2017) (finding class reaction was positive where no class member objection and seven members opted out after notice was sent to 427 class

members).

### e.    Awards in Similar Cases

Although 25% is the benchmark for a reasonable fee award, "in most common fund cases, the award exceeds that benchmark." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1047 (citing *In re Activision Sec. Litigation*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("The 25% was given [by the Ninth Circuit] for guidance . . . . As documented by the lengthy list of cases below, this court finds that in most recent cases the benchmark is closer to 30%. . . . [A] figure of approximately 30% is substantially justified.")).  Courts in several cases have approved awards near or exceeding 30%. *See, e.g.*, *Barbosa*, 297 F.R.D. at 450 (award of 33%); *Burden v. Selectquote Ins. Servs.*, 2013 U.S. Dist. LEXIS 109110, at *12-13 (N.D. Cal. Aug. 1, 2013) (same); *Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. June 1, 2010) (awarding 33.33%); *In re Omnivision Techs.*, 559 F. Supp. 2d at 1048 (other cases supported an award of 28% of the settlement fund); *In re Activision*, 723 F. Supp. at 1379 (awarding fees and expenses equaling 32.8%).  This factor also supports awarding the fee sought.

### f.    Lodestar

"As a final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Knight*, 2009 WL 248367, at *7 (citing *Vizcaino*, 290 F.3d at 1050-51 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award.")).  "Where a lodestar is merely being used as a cross-check, the court 'may use a rough calculation of the lodestar.'" *Aguilar*, 2017 WL 2214936, at *5 (quoting *Bond v. Ferguson Enters., Inc.*, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011)).

Sang J. Park's firm billed 208 hours in this litigation at rates of $550 per hour and $690 per hour, for a total billed of $115,800.  Fees Decl. ¶¶ 46-47.  Justin Lo's firm billed 82 hours at a rate of $495 for a total billed of $40,590.  Lo Decl. ¶¶ 9-10.  Together, the combined total billed was $156,390.  The requested fee amount is $240,000.  This represents a multiplier of approximately

United States District Court
Northern District of California

1.54 times the lodestar.[1]  This multiplier is on par with commonly accepted lodestar multipliers and supports approval of the requested fee amount.  *See, e.g.*, *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 265 (N.D. Cal. 2015) ("In light of the results of this action, the contingent nature of class counsel's fee arrangement, and the skill required in conducting this litigation properly and succeeding at settlement, the Court believes that the 1.49 multiplier—at the low end of the Ninth Circuit's scale—is appropriate."); *Bower v. Cycle Gear, Inc*, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016) (approving 30% fees in wage and hour case resulting in multiplier of 1.37); *Taylor v. FedEx Freight, Inc.*, 2016 WL 6038949, at *7 (E.D. Cal. Oct. 13, 2016) (approving $1,125,000 in fees—30% of settlement amount—in wage and hour case resulting in 2.26 multiplier); *Lazarin v. Pro Unlimited, Inc.*, 2013 WL 3541217, at *8 (N.D. Cal. July 11, 2013) (approving 25% benchmark fees in overtime case resulting in a multiplier of 3.36).  Because the multiplier is well within the accepted range, the lodestar confirms that the requested fee amount is acceptable.

**C.     Litigation and Administration Costs**

Counsel requests an award of litigation costs of $7,586.62 and the class administrator claims $14,000 in costs.  The SA provides for litigation costs but does not specify an amount or cap, and while it expressly provides for administration costs, it estimates them to be $9,500.  SA at 13.  First, to the administration costs, the administrator billed $14,000, which is larger than the estimate in the SA.  However, that was an estimated amount, and the administrator explains that "[t]he previous estimate of the administration costs [in the SA] did not account for a redistribution of the funds from the uncashed checks."  La Decl. ¶ 15.  The extra amount is not great.  Accordingly, the Court approves the $14,000 in administration costs.

Moving to Counsel's expenses, they include costs related to filing fees, mediation fees,

---

[1] The Court finds the number of hours billed and rates billed by Counsel to be reasonable.  *See, e.g.*, *Bisaccia v. Revel Systems Inc.*, 2019 WL 3220275, at *8 (N.D. Cal. July 17, 2019) (finding reasonable rates of $175 for clerks and paralegals, $425 for senior associates, and $625 to $675 for partners) (citing *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates); *In re Volkswagen*, 2017 WL 1047834, at *5 (billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable "given the complexities of this case and the extraordinary result achieved for the Class")).

service-of-process fees, photocopying, minor transportation and lodging fees, and legal research fees. Fees Decl. ¶ 50. The most significant expenses, $4,225, were for mediation fees. *Id.* Having reviewed the categories of costs and amounts attributed to each category, and considering the reasonableness of the fees and the fact that most of them are attributed to mediation costs, the Court finds the expenses were reasonably incurred. The Court approves the litigation and administration costs.

### D.      The Service Payments

Plaintiff also requests that the Court approve a $10,000 service award for him.

Service awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (citation omitted). The awards "are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former employers." *Bellinghausen*, 306 F.R.D. at 267. Courts evaluate service awards "using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." *Staton*, 327 F.3d at 977 (citation and internal quotations omitted). "[C]ourts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). "Incentive awards typically range from $2,000 to $10,000." *Bellinghausen*, 306 F.R.D. at 26 (collecting cases).

As discussed earlier, Plaintiff has actively been involved in the litigation, providing documents to Counsel, regularly conferring with Counsel on the case status and strategies for litigating the claims, assisting in responding to discovery, and attending a day-long medication. Additionally, Plaintiff is agreeing to a general release of claims, as opposed to the narrower wage and hour release applicable to class members generally. *See* SA at 9-11. And since this is a wage-and-hour action, Plaintiff faces a reputational risk in bringing suit against KM. These facts

United States District Court
Northern District of California

support awarding the payment.  *See Noroma v. Home Point Financial Corp.*, 2019 WL 5788658, at *10 (N.D. Cal. Nov. 6, 2019) (awarding $10,000 incentive award where plaintiff was "actively involved" and "added substantial value" to case); *Carter v. XPO Logistics, Inc.*, 2019 WL 5295125, at *4 (N.D. Cal. Oct. 18, 2019) (approving awards of $20,000 each for five named plaintiffs); *Taylor v. FedEx Freight, Inc.*, 2016 WL 6038949, at *8 (E.D. Cal. Oct. 13, 2016) (approving a $15,000 service payment for a $3,750,000 total settlement, with an average award of $2,616, in part because class representative had a broader release of liability).  Also, while the service payment falls above the range of settlement payments to class members, the proportionality of the award is not unreasonable given that Plaintiff is the sole named plaintiff.  "Courts weigh the proportionality between the incentive payment and the range of class members' settlement awards[] when considering whether a requested incentive award is reasonable."  *Wilson v. Tesla, Inc.*, 2019 WL 2929988, at *15 (N.D. Cal. July 8, 2019) (citing *Lopez v. Bank of Am., N.A.*, 2015 WL 5064085, at *8 (N.D. Cal. Aug. 27, 2015) (collecting cases)).  Finally, the $10,000 service award payment is 1.25% of the $800,000 settlement and considering there is only one award it does not significantly reduce the amount of funds available to the rest of the class.  *See Hightower*, 2015 WL 9664959, at *13 (granting incentive awards and noting "the enhancement awards, which constitute 1.5% of the maximum settlement amount, do not significantly reduce the amount of settlement funds available to the rest of the class") (citation omitted).  The Court finds that the $10,000 award payment is reasonable under these circumstances and will authorize it.

### III.   CONCLUSION

For the reasons stated above, the Court **GRANTS** final approval of the Settlement Agreement and **GRANTS** the Motion for Attorneys' Fees.  The Court **APPROVES** payment of $240,000 of the Settlement Account for attorneys' fees; $7,586.62 for Counsel litigation costs; $14,000 for Claims Administrator costs; and $10,000 as a Service Award for the named Plaintiff.

The Court **ORDERS** the following:

1.     Defendant shall deliver the settlement amount to fund the Settlement Account in accordance with the terms of the Settlement Agreement, and the Claims Administrator shall make

United States District Court
Northern District of California

Settlement payments, approved attorneys' fees and costs, and the approved award payment in accordance with the terms of the Settlement Agreement.

2.      Plaintiff and all Class Members are bound by the release provisions contained in the Settlement Agreement.

3.      The Court retains continuing jurisdiction over: (a) implementation and enforcement of the Settlement Agreement pursuant to further orders of the Court, until such time as the final judgment contemplated hereby has become effective and each and every act agreed to be performed by the parties hereto shall have been performed pursuant to the Settlement Agreement, including the payments from the Settlement Fund; (b) any other action necessary to conclude this settlement and implement the Settlement Agreement; (c) the enforcement, construction, and interpretation of the Settlement Agreement, including but not limited to, any disputes concerning Class Members' release of claims; and (d) the determination of validity of opt-outs, if called upon to make that judicial determination.

4.      The above-captioned action is **DISMISSED** on the merits and with prejudice, subject to the Court retaining jurisdiction to administer and enforce the Settlement Agreement as described above.  This dismissal is without cost to any party except as specifically provided in the Settlement Agreement.

**IT IS SO ORDERED.**

Dated: September 25, 2020

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

16